Ed BARTON et al., Appellants,

v.

GAS SERVICE COMPANY, Inc., Appellee.

Court of Appeals of Kentucky.

Feb. 2, 1968.

Joe Nagle, Denham, Ralston & Nagle, Middlesboro, for appellants.

Grant F. Knuckles, James S. Wilson, Pineville, for appellee.

PALMORE, Judge.

On July 16, 1964, a building owned by the appellant Barton and occupied by the appellants Nickens, French and their wives was destroyed by a fire which apparently originated in or with an explosion. The owner, the tenants, and the owner's insurer brought this suit against the appellee, Gas Service Company, Inc., for property loss and damages, alleging in general terms that the fire was caused by its negligence. They appeal from a summary judgment in favor of the defendant company.

The single question to be decided is whether, from the information thus far developed in the proceeding, it is so clear the plaintiffs cannot win that a summary judgment is appropriate.

After commencement of the action the plaintiffs served interrogatories on the defendant company, which were answered in due course, and both sides took discovery depositions. In addition, an affidavit of the plaintiff Nickens was attached in support of the response to the defendant's motion for summary judgment. It is conceded that none of the information so elicited indicates the cause of the explosion and that further evidence in this respect would be necessary in order for the plaintiffs to survive a motion for directed verdict in the event of a trial.

The building was constructed in 1950. It consisted of garage and storage space on the ground floor and two apartments upstairs. The ground floor space was rented to the Kerns Bakery Company. The Frenches and Nickenses occupied the two apartments. French was an employe of Kerns Bakery Company. He and his wife moved into their apartment on the morning of July 16, 1964, and the explosion occurred between 8:00 and 9:00 o'clock that night. The Nickenses had lived in the other apartment since 1960.

Each of the two apartments was equipped with a gas floor furnace, and the French apartment was furnished with a gas cook stove. The two apartments were separately metered for gas, which was provided by the defendant company from its gas main located across the street from the apartment house. The meters were located on the outside wall of the building. As was customary, the company had removed the meter for the French apartment when the previous tenants left, and during the afternoon of July 16 two of its service men installed another meter for the Frenches. One of these men testified that when the gas was turned on the hand on the meter dial remained stationary, indicating the absence of any gas leak in the metered premises, and that he then lighted the cook stove in the French apartment and found it to be in good order. Had he detected any evidence of a leak, his instructions from the company were to cut off the supply and notify the owner. The duties of a supplier of gas under such circumstances are set forth in Moore v. London Gas Company, Ky., 372 S.W.2d 270 (1963).

A gas hot water heater was located in the middle of the downstairs garage area. Evi-

dently it was on the Nickens' meter, because the evidence indicates it served both apartments. It was in use on the day of the fire. At the time of the fire two motor trucks were in the garage. Each had gasoline in its fuel tank. The hot water heater was located on the floor between them, about four feet from each. When discovered, the fire had enveloped the downstairs ceiling area over the trucks.

None of the witnesses professed to know how the fire originated, except insofar as it seems to have been accompanied by an explosion. The meter had been installed in the mid-afternoon. Mrs. French's father was in and out of the apartment most of the afternoon and smelled gas after the gas service men came. He says he reported this to them when they came upstairs to light the stove, and that the odor of gas was not as strong after they left. Mrs. French made a trip to London, Kentucky, during the afternoon and returned at about 7:00 P.M. At that time, she says, she smelled gas "in the apartment and downstairs" and so told her husband. The explosion took place between one and two hours later.

In his discovery deposition Nickens, when asked if he knew of any witnesses who purported to know anything about the fire, read off a list of 14 names. None of these persons has testified and the record does not suggest what, if anything, can or cannot be proved by any of them.

What happened here is that the defendant took the testimony of the parties and witnesses who seemed most likely to have the information necessary to establish the plaintiffs' case, and the information thus extracted is not enough to establish a case. Nor is the evidence obtained by the plaintiffs through examination of the defendant's employes and representatives. Nothing, however, has been developed that is fatal to the cause of action the plaintiffs

assert, nor is it clear that it cannot be established through other witnesses.

The question of when a summary judgment is proper continues to be one of the most difficult problems encountered under the Rules of Civil Procedure. A satisfactory rule of thumb to answer it seems to defy captivity. In this case we have concluded that the judgment was premature and should not have been granted because, although the facts and evidence thus far developed do not establish the existence of a genuine issue of material fact, neither do they establish the non-existence of such an issue.

■ "In determining whether the moving party has satisfied his burden it is helpful to refer to the theory underlying a motion for a directed verdict, for functionally the motion for summary judgment and the motion for a directed verdict are closely akin to each other. While the first is necessarily made on evidentiary materials largely derived from the moving and opposing papers and the second is based largely on live evidence proffered at trial, the moving party in making both motions takes the position that he is entitled to judgment as a matter of law on a set of facts that are not genuinely in dispute. In other words, if it is clear that a verdict would be directed for the movant on the evidence presented at the hearing on the motion for summary judgment, the motion for summary judgment may properly be granted.* The operation of the motion, is then, essentially the same in reference to those issues upon which the movant for summary judgment would have, at trial, the burden of proof. *The operation is, however, somewhat different where the motions are made by the opponent of the party with the trial burden.* Assume, for example, that the movant is the defendant who is attacking the merits of plaintiff's claim. On motion for directed verdict the party resisting the motion, i. e., the plain-

---

* That is, if it is clear that the evidence before the court on the motion for summary judgment is substantially the same as it would be on a motion for directed verdict. (Our comment.)

tiff, has had to and has presented his evidence, which is then scrutinized by the motion. On motion for summary judgment by a defendant on the ground that plaintiff has no valid claim, the defendant, as the moving party, has the burden of producing evidence, of the necessary certitude which *negatives* the opposing party's (plaintiff's) claim. This is true because the burden to show that there is no genuine issue of material fact rests on the party moving for summary judgment, whether he or his opponent would at trial have the burden of proof on the issue concerned; and rests on him whether he is by it required to show the existence or non-existence of facts." (Emphasis added.) 6 Moore's Federal Practice Par. 56.15 [3], p. 2341 (2d ed. 1966). In a footnote (Id., p. 2342) to the statement thus quoted, the author comments further as follows: "In analogizing the summary judgment to a directed verdict it should be borne in mind that summary judgment, to avoid a trial, should not be granted if there is the slightest doubt as to the facts * * *. And hence the grant of summary judgment may be improper where at the trial the grant of a directed verdict may be proper."

■ It was observed in Robert Simmons Const. Co. v. Powers Regulator Co., Ky., 390 S.W.2d 901, 905 (1965), that in some cases the party opposing a motion for summary judgment may be forced to show his hand, or enough of it to defeat the motion, before trial on the merits; but only when the moving party has first established the apparent non-existence of a genuine issue of material fact. Normally, and usually, that situation would come about in the following manner: If the moving party "by affidavit or otherwise presents materials which would require a directed verdict in his favor, if presented at trial, then he is entitled to summary judgment unless the opposing party shows that affidavits are then unavailable to him, or he comes forward with some materials, by affidavit or otherwise, that show there is a triable issue of material fact." Id., § 56.11 [3], p. 2171.

See, for example, Tarter v. Arnold, Ky., 343 S.W.2d 377 (1961).

■ Another situation in which a party becomes entitled to a summary judgment commonly occurs when it is clear that the evidence before the court on the motion for summary judgment represents all the responding party can do, in that he could show nothing more or different to strengthen his case upon a trial. To illustrate, see Payne v. B-Line Cab Company, Ky., 282 S.W.2d 342 (1955); American Ins. Co. v. Horton, Ky., 401 S.W.2d 758 (1966); and Haywood v. Allen, Ky., 406 S.W.2d 721 (1966).

■ In the present case it is not clear that the plaintiffs cannot produce the necessary showing of causation at a trial on the merits. Neither this nor the trial court can know, from the record, what the other witnesses named in the Nickens deposition will be able to contribute to a solution of that question. The testimony of Mrs. French's father that he smelled gas and reported it to the gas service men is enough to indicate a genuine issue on the question of negligence.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.