Joseph L. WHITE, Appellant,

v.

RAINBO BAKING COMPANY and Don Closterman, Appellees.

No. 88–CA–322–MR.

Court of Appeals of Kentucky.

Nov. 18, 1988.

Rehearing Denied Feb. 24, 1989.

Dean A. Langdon, Lexington, for appellant.

Tony Curtis Coleman, David B. Sandler, Louisville, for appellees.

Before HOWARD, McDONALD and WILHOIT, JJ.

HOWARD, Judge.

The appellant filed a complaint against the appellees on the ground of racial discrimination and retaliation in the refusal to hire him for a certain position. The Fayette Circuit Court granted the appellees' motion for summary judgment and this appeal follows.

The appellant, Joseph L. White, originally applied for employment with the appellee, Rainbo Baking Company, in March of 1983. White sought employment as a route salesman in addition to other positions. A route salesman in general would take orders for Rainbo's products, make deliveries and answer questions from the customers. White was informed in September of 1983 that he would not be hired by Rainbo. Subsequently, White filed a complaint with the Lexington–Fayette Human Rights Commission in which he charged that he was denied employment by Rainbo because he is black. That complaint was withdrawn on September 28, 1983, because White accepted a job in Rainbo's sanitation department.

In December of 1984, White was laid off from his sanitation job. In January of 1985, White inquired of the appellee, Don Closterman, the general sales manager for Rainbo, if there were any positions for route salesmen available. Closterman replied that the company usually has some openings in March or April of each year. Between January and March of 1985, White contacted Closterman several times.

Later, Closterman told White that someone else had been hired.

On April 11, 1985, White brought the instant action against the appellees.[1] The action was brought pursuant to KRS 344.010 et seq. and 42 U.S.C. § 1981. White alleged *inter alia* that Rainbo's policies had caused him to suffer disparate treatment due to his race, that these policies had a disparate impact on those of his race and that Rainbo refused to hire White for a route salesman in retaliation for his filing of the discrimination complaint in 1983.

Rainbo denied that the reason White was not hired as a route salesman had anything to do with his race or retaliation for his filing of the 1983 complaint. Closterman, who had the sole authority to hire route salesmen, interviewed White shortly after he applied in 1983. Closterman had no formal guidelines for evaluating potential employees but essentially he considered prior experience in selling or delivering a product, particularly items such as bread or soft drinks, and in dealing with the public. Closterman also placed much importance on the manner in which an applicant conducted himself during the interview.

For a year prior to his application with Rainbo, White worked as a "route manager" for a company called Jet TV Rental. White's duties consisted of delivering televisions, explaining the rental contracts, collecting past-due payments or the item itself, and soliciting sales by talking to people and handing out fliers on the street or door-to-door. Three drivers worked under White's supervision. Jet TV told Mike Staton, an employee at Rainbo, that White was a good employee and did as he was instructed.

Closterman stated that he did not consider White's employment at Jett TV Rental as preparatory experience for working at Rainbo as a route salesman. Closterman also felt from his conversations with White, that White's mental reactions were too slow. Consequently, White was not hired as a route salesman in 1983. White was also not hired as a route salesman in 1985, Closterman maintained, because, based on

the interview of 1983, he felt White could not adequately perform the job. Closterman stated that he did not inform White of this decision for a time because "he didn't want to hurt [White's] feelings" by immediately turning him down.

The appellees filed a motion for summary judgment which was granted by the trial court on November 2, 1987.

KRS 344.020(1)(a) states that the general purposes of that chapter are to "provide for execution within the state of the policies embodied in the Federal Civil Rights Act of 1964."

This Court stated in *Kentucky Commission on Human Rights v. Commonwealth*, Ky.App., 586 S.W.2d 270, 271 (1979), that because the state statute is virtually identical to the federal statute (Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.), "United States Supreme Court decisions regarding the federal provision are most persuasive, if not controlling, in interpreting the Kentucky statute." The Sixth Circuit has held that the burdens of proof established for Title VII apply equally to Section 1981 actions. *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir.1974).

A matter we must address at the outset is the contention of the appellees that White waived his right to claim he was not hired by Rainbo due to his race.

The only mention of waiver by the appellees in the record before the trial court is in the appellees' answer. In that answer, the appellees state "[P]laintiff waived his right to assert claims based on events which occurred prior to October 1, 1983." Waiver is not discussed in any subsequent memoranda nor was it a basis for the trial court's judgment.

The waiver discussed in the appellees' answer refers to the failure to hire White in 1983. White does not complain of any wrong connected with the actions by the appellees in 1983. Rather, White's claim is based on the events occurring in 1985. Thus, the appellees' allegation in their answer is not applicable to the case at bar.

---

1. Two other defendants named in the complaint have since been dismissed from the suit.

Because the appellees have not raised the issue of waiver in regards to the 1985 refusal to hire before the trial court, we will not consider it. *Akers v. Floyd County Fiscal Court,* Ky., 556 S.W.2d 146 (1977).

A plaintiff may prove a case of unlawful employment discrimination through either disparate treatment or disparate impact. *Rowe v. Cleveland Pneumatic Company,* 690 F.2d 88 (6th Cir. 1982). To prevail under the disparate treatment theory, the plaintiff must show that his employer treated some people less favorably due to their race, color, religion, sex or national origin. *Id. See McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The disparate impact doctrine applies when the plaintiff attempts to show that a facially neutral employment practice falls more heavily on one group than another and this practice is not justified by any business necessity. *Rowe, supra. See Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

The Supreme Court in *Green, supra,* set forth the proper allocation of the burdens of proof in disparate treatment cases.

First, the plaintiff must prove a prima facie case of discrimination by a preponderance of the evidence. *Id.* To make the prima facie showing, the plaintiff must prove by a preponderance that he applied for and was qualified for an available position, but was not hired under circumstances which raise an inference of unlawful discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Then, if the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Green, supra,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 678. Finally, should the defendant carry this burden, the plaintiff shall have an opportunity to show by a preponderance of the evidence that the defendant's stated legitimate reasons were a "pretext" for discrimination. *Id.* 411 U.S. at 804, 93 S.Ct. at 1825, 36 L.Ed.2d at 679.

It must be remembered, however, that the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff resides at all times with the plaintiff." *Burdine, supra.* 450 U.S. at 248, 101 S.Ct. at 1089, 67 L.Ed.2d at 215. In addition, the procedural steps outlined in *Green, supra,* apply equally to § 1981 actions.

White contends the trial court erred by limiting his discovery, striking an affidavit offered by White and otherwise restricting the evidence White could introduce.

White filed a motion to compel production of documents relating to prior complaints of discrimination filed against Rainbo. The appellees resisted on the grounds of irrelevancy. White's motion was denied by the trial court.

At the taking of Closterman's deposition, Closterman was asked by White's counsel about a prior incident where discrimination may have been involved. The appellees again objected on the grounds of irrelevancy and Closterman was instructed not to answer. The trial court denied White's motion to compel Closterman to answer on the grounds of irrelevancy.

White submitted an affidavit of Charles Taylor, concerning prior discrimination at Rainbo, with his response to the appellees' motion for summary judgment. The appellees filed a motion to strike this affidavit. The trial court granted this motion.

In *Lynch v. Freeman,* 817 F.2d 380 (6th Cir.1987), the Court stated that in a disparate treatment case, all evidence of discriminatory intent, both circumstantial and direct, must be considered.

It was held in *Cook v. Boorstin,* 763 F.2d 1462 (D C.Cir.1985), a disparate treatment case against the Library of Congress, that evidence of library-wide discrimination, rather than just in the plaintiff's job category, was admissible.

The Eleventh Circuit permitted a black plaintiff in *Miles v. M.N.C. Corporation,* 750 F.2d 867 (11th Cir.1985), to introduce evidence in proving his prima facie case of

disparate treatment that the individual in charge of hiring had made a racial slur to a white employee.

The trial court found that even without the evidence in question, White had "arguably" made the requisite prima facie showing and that the appellees had carried their burden of showing a legitimate nondiscriminatory reason for not hiring him. However, the trial court found that White had failed to establish pretext. We conclude from the relevant cases that the evidence of other discriminatory acts by the appellees was admissible to show a prima facie case or pretext. *See Rowe, supra.* Thus, the trial court erred in granting the appellees' motion for summary judgment in regards to disparate treatment.

White also contends that the trial court erred in granting a summary judgment on the theory of disparate impact.

■■■ The appellees did not discuss the claim of disparate impact in the memorandum in support of the motion for summary judgment. White did not address disparate impact in his response because it had not been discussed by the appellees. However, White stated in that response that he was not waiving any rights he might have under the disparate impact theory. In their reply memorandum, the appellees argued that there was no evidence of disparate impact.

White moved to strike so much of the appellees' reply dealing with disparate impact because they should not be permitted to raise new issues in the reply. The trial court ruled that if White wanted to argue the disparate impact theory to overcome the summary judgment motion, he should have done so in his responsive memorandum. Consequently, the motion to strike was denied.

The burden of establishing that no material issues of fact exist rests upon the party moving for summary judgment. *Conley v. Hall,* Ky., 395 S.W.2d 575 (1965). However, the trial court's action essentially put the burden on White to show that there was an issue of material fact. This shifting of the burden is not supported by case law.

Moreover, under CR 56.02, a party defendant may move for summary judgment on all claims or on any part thereof. Thus, White could have justifiably assumed that the appellees wished summary judgment only in regard to claims of disparate treatment and retaliation, and not disparate impact. Thus, the trial court erred in granting the appellant's motion with regard to disparate impact.

White does not address the grant of the appellees' motion for summary judgment on the retaliation issue. An issue not discussed in the briefs will not be reviewed by the appellate courts. *Milby v. Mears,* Ky. App., 580 S.W.2d 724 (1979).

The judgment of the Fayette Circuit Court is affirmed in part and reversed in part.

All concur.