Judy Mae GOFF and Phillip G. Goff, Appellants,

v.

Rodney S. JUSTICE and Wilson, Stavros & Justice, Appellees.

No. 2001–CA–001485–MR.

Court of Appeals of Kentucky.

Aug. 16, 2002.

Discretionary Review Denied Dec. 11, 2003.

Brenn O. Combs, Lexington, KY, for appellants.

Phillip Bruce Leslie, Greenup, KY, for appellees.

Before: BUCKINGHAM, GUIDUGLI, and HUDDLESTON, Judges.

## OPINION

BUCKINGHAM, Judge.

Judy Mae Goff and Phillip G. Goff appeal from an order of the Boyd Circuit Court denying their motion to alter, amend, or vacate a summary judgment entered by that court in favor of Appellees Rodney S. Justice and Wilson, Stavros & Justice. The summary judgment resulted in a dismissal of the Goffs' legal malpractice complaint against the appellees. We conclude that the trial court erred in awarding summary judgment to the appellees, and we thus reverse and remand.

Mrs. Goff was injured while stocking shelves as a part of Wal–Mart's new store set-up team for a store in Evansville,

Indiana. Because of her injury, she sought treatment from several medical professionals, including Dr. Christopher McCoy and Dr. William G. Pearson. Dr. McCoy performed surgery on Goff to remove her first rib and a cervical rib on one side. The surgery took place in the Owensboro–Daviess County Hospital.

As a result of the treatment Goff received during her recovery from the surgery, she and Mr. Goff filed medical malpractice claims in the Daviess Circuit Court on March 28, 1991. The Goffs were initially represented by Grover S. Cox and Grover C. Cox. The three defendants named in the Goffs' complaint were the Owensboro–Daviess County Hospital, Dr. McCoy, and Dr. Pearson. The trial court later entered an order allowing Wal–Mart to intervene and assert a subrogation claim based on benefits it had paid on behalf of the Goffs.

In April 1992, the trial court granted the Goffs' attorneys' motion to withdraw, and Appellee Rodney S. Justice entered an appearance as attorney on their behalf. At that time, only one medical expert, Dr. Isidore Mandelbaum, had been identified by the Goffs as an expert witness on their behalf. Dr. Mandelbaum was then Mrs. Goff's treating physician. Justice claims that at the time he entered the case no evidence was in the case file which would have supported a claim of negligence against either the hospital or Dr. Pearson. Further, Justice claims that Dr. Mandelbaum's opinion, while critical of Dr. McCoy, failed to support claims against either the hospital or Dr. Pearson.

Dr. Mandelbaum was deposed on August 31, 1992. As a result of his deposition, the hospital moved the trial court to award it summary judgment. Although the motion was properly noticed and was continued once at the request of the defendants, Justice failed to file a written response to it. In addition, he failed to appear at either hearing. As a result, the trial court granted the hospital's motion. In doing so, the trial judge noted, "[w]e will enter a summary judgment. Maybe that will get his attention."

Shortly thereafter, Dr. Pearson's attorney approached Justice seeking an agreed order of dismissal for his client. The Goffs acknowledge that Justice consulted them on this matter. They assert they informed Justice that they would "reluctantly agree" if two conditions were met. The first condition was that Dr. Pearson continue as Mrs. Goff's treating physician, and the second condition was that Dr. Pearson agree to provide expert testimony regarding the care provided by Dr. McCoy. Subsequent to the signing of the agreed order of dismissal, the Goffs learned that the conditions they sought had not been agreed to. They allege that Justice misled them into believing that Dr. Pearson had agreed to the conditions.

Mrs. Goff also received medical care from Dr. Erdogan Atasoy. The Goffs claim that Dr. Atasoy was critical of the care Mrs. Goff had received and that they informed Justice of Dr. Atasoy's opinion. The Goffs asked Justice to approach Dr. Atasoy for his services as a medical expert in the case, and Justice admitted in his deposition that he failed to contact Dr. Atasoy. Further, the Goffs allege that Justice, without consulting them and in direct conflict with their wishes, informed Dr. McCoy's attorney that the Goffs would not call Dr. Atasoy as an expert witness. Dr. McCoy's attorney, armed with Justice's representation, sought and obtained an order from the trial court which precluded the Goffs from using Dr. Atasoy as a medical expert in the case.

In October 1992, Justice filed a motion asking that the case be set for trial. The Goffs assert that at this point Justice's actions had effectively resulted in the dis-

missal of two of the three defendants from the case. Further, not only had Justice's actions precluded the use of Dr. Atasoy as an expert, but the Goffs allege that Justice made no attempt to independently investigate the claims nor did he attempt to develop any further expert testimony for the case.

Justice failed to appear at the hearing on his motion to set a trial date. As a result, he was forced to refile his motion in both October and December 1993. In both instances Justice failed to appear before the court on the motions. Although the Goffs acknowledge that the court finally set a trial date, they point out that it was continued based on a motion filed by Dr. McCoy. When Dr. McCoy's motion to continue the trial date was heard, Justice again failed to appear at the hearing and the case was continued until August 1994.

On or about July 14, 1994, Justice informed the Goffs that he would be filing a motion to withdraw as their attorney. He also informed them that Dr. Mandelbaum had told him that he would not testify as a medical expert on their behalf. On August 3, 1994, a hearing was held on Justice's motion to withdraw. At the hearing he informed the court that he would be leaving the practice of law.

Further, Justice related that Dr. Mandelbaum had contacted him and had informed him that because Mrs. Goff refused to comply with his treating recommendations, he would not testify on her behalf. The Goffs assert that when the court pressed him further on the status of the case for trial, Justice assured the court that he thought Dr. Mandelbaum would testify and that the case was ready. Justice did request the Goffs be given a short continuance to obtain counsel. The Goffs allege that Justice also assured the court

that he would assist them in obtaining counsel. Although the scheduled trial was less than two weeks away, the trial court granted Justice's motion to withdraw based on his assurances.

At the hearing on Justice's motion to withdraw, Dr. McCoy's attorney, having heard Justice describe Dr. Mandelbaum's position, moved the court to preclude the Goffs from obtaining any further medical expert witnesses. The motion was made in Justice's presence. However, he elected to make no response and did not file an objection or seek a continuance so as to allow the Goffs to respond to the motion. As a result, the court entered an order precluding the Goffs from obtaining any further expert testimony.[1]

Although the Goffs allege that they did not receive any assistance from Justice or from Wilson, Stavros & Justice and that they had difficulty in having their file turned over to them, they finally obtained the services of another attorney, Shirley Allen Cunningham. Cunningham entered an appearance in the circuit court on behalf of the Goffs on November 28, 1994.

One of Cunningham's first actions was to file a motion seeking to name a new expert. That motion was denied. Cunningham then sought leave to take Dr. Atasoy's deposition. While the court granted this motion, it made clear that Dr. Atasoy could be used only as a fact witness and would be precluded from offering any testimony concerning the care provided by Dr. McCoy.

A trial on the Goffs' claims against Dr. McCoy was held in March 1995. The Goffs, who were precluded from calling further medical experts, were forced to present Dr. Mandelbaum's opinions

---

1. Justice claims that since he was withdrawing as counsel for the Goffs, he had no authority to act on their behalf concerning the motion by Dr. McCoy's attorney.

through his deposition. The jury returned a verdict in favor of Dr. McCoy.

As we have noted, the Goffs were precluded from offering any expert testimony at trial from Dr. Atasoy concerning the care provided by Dr. McCoy. However, Dr. McCoy's attorney elicited expert testimony from Dr. Atasoy concerning that care. Thus, the Goffs appealed the judgment in favor of Dr. McCoy to this court. In an opinion rendered in February 1997, a panel of this court agreed with the Goffs and remanded the case for a new trial. This court noted that when the Goffs' attorney entered the case, he filed a motion for leave to obtain a medical expert given the fact that Dr. Mandelbaum refused to testify. The court went on to say that "Mrs. Goff should be able to obtain a new expert witness for that trial." However, this court further stated that "[i]n order to prevent Dr. McCoy from having to find and retain rebuttal witnesses, Mrs. Goff's new expert's opinions should not exceed the scope of the opinions previously disclosed or testified to by Dr. Mandelbaum."

In February 1998, Cunningham was allowed to withdraw as the Goffs' attorney. A new attorney entered an appearance on the Goffs' behalf, and a settlement with Dr. McCoy was ultimately reached. Based on this settlement, the medical malpractice case was resolved with the last of the three original defendants.

In the meantime, the Goffs had filed a legal malpractice claim in the Boyd Circuit Court against Justice and Wilson, Stavros & Justice.[2] Their claim was filed by Cunningham in October 1995, after the medical malpractice case had been appealed. The trial court entered an order in March 1997 allowing Cunningham to withdraw as counsel for the Goffs. In June 1997, their current counsel entered an appearance in this case. At that time the medical mal-

practice case had been remanded by this court on appeal. The record in this legal malpractice case indicates that it was inactive while the underlying medical malpractice case was being resolved. In February 2000, the Goffs filed a motion asking that this case be returned to the active docket for further action. The court redocketed the case, and the parties began the discovery process.

In April 2001, the appellees filed a motion for summary judgment. They relied upon the fact that the underlying medical malpractice case had been reversed and remanded and on the fact that the Goffs had reached a settlement with Dr. McCoy. They thus asserted that the Goffs had a "second bite of the apple" and were placed in the same position they had been in when Justice withdrew from the case. Further, the appellees asserted that the Goffs could not establish any damages in light of their settlement with Dr. McCoy. In this regard, they cited *Mitchell v. Transamerica Ins. Co.*, Ky.App., 551 S.W.2d 586 (1977).

In response to the appellees' summary judgment motion, the Goffs filed a response relying on responses to interrogatories and the depositions then of record. Further, the Goffs argued that the *Mitchell* case could be distinguished. In particular, the Goffs asserted that there is a significant difference between "electing to settle" a case in which the claim could have been fully presented and being "forced to settle" a case in which the presentation of the claim would have been subject to limitations imposed based on Justice's actions prior to withdrawing.

The appellees then filed a reply to the Goffs' response in which they raised for the first time a claim that the Goffs had failed to present any expert testimony in support of the allegations in their com-

---

2. Wilson, Stavros & Justice was the law firm    of which Justice was a member.

plaint. The appellees cited *Neal v. Welker*, Ky., 426 S.W.2d 476 (1968), for the premise that once the movant has presented evidence of the non-existence of a material issue of fact, then it is incumbent on the non-movant to counter with evidence. The Goffs then filed a surreply arguing that the appellees improperly raised the expert testimony argument for the first time in the reply and also arguing that they (the Goffs) had presented names of experts as well as opinion letters.[3] Further, the Goffs argued that because the underlying case involved numerous medical and legal professionals, it would be possible to introduce the necessary evidence through fact witnesses who could provide lay opinions based on personal observations. Finally, the Goffs asserted that even if it is assumed they had yet to satisfy an expert witness requirement, nothing then in the record precluded them from obtaining additional evidence in the future.

On April 30, 2001, the trial court entered a summary judgment in favor of Justice and Wilson, Stavros & Justice. The court stated, "[i]t is this Court's opinion that when Plaintiffs settled their underlying medical negligence case, they effectively dismissed their legal negligence case." The court reasoned that it was incumbent upon the Goffs to show that they had been damaged by the actions or inactions of their attorney and that by settling the medical malpractice case they lacked such proof. The court also held that "even if the Plaintiffs could survive the *Mitchell* case and its progeny on the issue of settlement/damages, Defendants would still be entitled to Summary Judgment due to Plaintiffs having failed to put forth any probative evidence on each necessary element of their claim." The trial court summarily denied the Goffs' motion to alter, amend, or vacate the judgment, and this appeal by the Goffs followed.

The applicable rule regarding summary judgments states in pertinent part as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR[4] 56.03. A summary judgment should not be rendered if there is any issue of material fact, and "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Ctr., Inc.*, Ky., 807 S.W.2d 476, 480 (1991). "The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996).

As we have noted, the trial court held that the Goffs "effectively dismissed their legal negligence case" when they settled their medical negligence claim against Dr. McCoy. We conclude that this holding by the trial court was error for two reasons. First, we disagree with the trial court that by settling their claim against Dr. McCoy, they lost their right to pursue a legal

---

**3.** The Goffs identified potential experts in their responses to interrogatories. In addition, they alleged that more detailed information was provided in letters to counsel. While the appellees acknowledged the existence of the letters, they argue that is insufficient because the expert testimony was not placed in the record.

**4.** Kentucky Rules of Civil Procedure.

malpractice claim against Justice concerning Dr. McCoy.

The trial court's ruling was based on the *Mitchell* case. The Mitchells were injured in an accident with a tractor-trailer rig just north of Shepherdsville, Kentucky. They employed Carr to represent them in a lawsuit against the driver and owners of the tractor-trailer. Carr failed to file the Mitchells' complaint prior to the expiration of the applicable statute of limitations. When he admitted his error to the Mitchells, they hired another attorney who, by taking advantage of a longer statute of limitations in Indiana, filed their claims in Indiana in federal court. Prior to trial in Indiana, the Mitchells entered into a settlement with the defendants.

Meanwhile, the Mitchells brought a legal malpractice claim against Carr in the Jefferson Circuit Court. A jury there awarded the Mitchells compensatory and punitive damages against Carr. However, this court reversed the judgment on appeal. Although the court noted that Carr was guilty of legal malpractice, it stated that "this court cannot see where the Mitchells proved their damages." *Id.* at 588. The controlling factor was that the Mitchells, who had the right to fully litigate all claims against the defendants in a court of competent jurisdiction, had elected instead to settle the case. Although the Mitchells argued that they would have received more damages from a Kentucky jury, this court noted that there was no way of knowing what an Indiana jury would have done since the case was settled prior to trial.

In the case *sub judice*, the appellees argued and the trial court agreed that the settlement of the Goffs' claim against Dr. McCoy precluded their legal malpractice claim against them. As for the Goffs' argument that on remand of the opinion of this court in the medical malpractice case the Goffs would have been subject to limi-

tations, the appellees assert that the Goffs were placed in the same position they were in when Justice withdrew from the case. They note that this court's opinion reversing the original judgment in favor of Dr. McCoy allowed the claim against him to proceed to a new trial with the right to retain new expert witnesses whose testimony could not exceed the scope of the opinions previously disclosed or testified to by Dr. Mandelbaum. The Goffs assert that this, in fact, is the problem.

The Goffs argue that Justice's actions imposed a framework of limitations within which any further action on the case would be contained on remand. In particular, the Goffs point out (1) that two of the three defendants had been released from the case; (2) that Dr. Atasoy, who had indicated his concerns with Mrs. Goff's treatment, was precluded from testifying as an expert; and (3) that any new expert would be specifically limited to expressing the same views Dr. Mandelbaum had expressed. They argue that, unlike the Mitchells, on remand they did not have the opportunity to fully litigate all claims arising from the incident. The Goffs argue that under these circumstances they were "forced to settle" as opposed to freely "electing to settle."

In further support of their argument, the Goffs cite *Kirk v. Watts*, Ky.App., 62 S.W.3d 37 (2001). The *Kirk* case involved a claim of legal malpractice based on an attorney's handling of Kirk's sexual harassment claim and her bankruptcy. After Kirk approached Watts to represent her on the sexual harassment claim against her employer, she and her husband went back to Watts to seek advice on bankruptcy. Watts advised them to proceed on a Chapter 7 bankruptcy while at the same time withholding any mention of the sexual harassment claim. Once the bankruptcy

became final, Watts filed the sexual harassment claim.

During discovery, Kirk's former employer discovered the bankruptcy. Ultimately, the bankruptcy court allowed the Kirks to reopen the bankruptcy. In doing so, the bankruptcy judge directed that the bankruptcy trustee be substituted as the plaintiff on Kirk's sexual harassment claim. The bankruptcy trustee settled the sexual harassment claim for $52,000, with $15,000 to be paid to Kirk. He noted in an affidavit that had Kirk objected to the settlement, he would have recommended to the bankruptcy court that she get nothing. The trustee also stated in the affidavit that he believed Kirk would have received nothing had she objected.

After the settlement of the sexual harassment claim was reached, Kirk filed a legal malpractice claim against Watts. Watts sought a summary judgment, claiming that Kirk's settlement of her sexual harassment claim with her employer precluded her legal malpractice claim against him. In support of his argument, Watts cited the *Mitchell* case. The trial court agreed with Watts that Kirk's claim was precluded by the *Mitchell* case and awarded Watts a summary judgment.

A panel of this court reversed the summary judgment and remanded the case to reinstate Kirk's complaint. The court noted the factual differences between Kirk's claim and the *Mitchell* case. The court noted that the Mitchells lost nothing as a result of their attorney's malpractice because they were able to maintain an action in federal court. The court distinguished Kirk's claim because Kirk lost the opportunity to maintain the case in her own name and to prosecute her own interests as a result of Watts' advice not to list the claim on the bankruptcy petition.

■ As is clear from our holding in the *Kirk* case, the mere fact that Goff reached a settlement on her underlying medical malpractice claim against Dr. McCoy does not mean that she forfeited her right to pursue a legal malpractice claim against the appellees.[5] As in the *Kirk* case, we must look beyond the fact that the underlying claim was settled and consider the position in which the Goffs had been placed by the appellees. Because of the alleged negligent actions of Justice, the Goffs were limited in the presentation of evidence against Dr. McCoy. In short, we conclude that the Goffs' legal malpractice claim against the appellees remained alive even after her settlement with Dr. McCoy.

■ We also believe the trial court erred for a second reason when it dismissed the Goffs' claim against the appellees due to the McCoy settlement. The Goffs' medical malpractice case named three defendants when it was filed. The defendants were the hospital, Dr. McCoy, and Dr. Pearson. The settlement involved only Dr. McCoy. Based on Justice's actions, the hospital and Dr. Pearson had been released from the case. We agree with the Goffs that even if the settlement with McCoy precluded further action against the appellees based on that underlying claim, the settlement would have no effect on claims relating to Justice's actions which impacted the Goffs' claims against the hospital and Dr. Pearson.

Next, as we have noted, the trial court gave a second reason for awarding summary judgment to the appellees. The court stated that "even if the Plaintiffs could survive the *Mitchell* case and its progeny on the issue of settlement/damages, Defendants would still be entitled to Summary Judgment due to Plaintiffs hav-

---

**5.** In fairness to the trial court, we note that its decision came before this court's opinion in *Kirk.*

ing failed to put forth any probative evidence on each necessary element of their claim." The appellees improperly raised this argument for the first time in their reply to the Goffs' response to the appellees' motion for summary judgment. Although the Goffs argued this to the trial court, the court allowed the argument to be made and allowed the Goffs to file a surreply limited to two pages in length.

A similar situation occurred in *White v. Rainbo Baking Co.*, Ky.App., 765 S.W.2d 26 (1988). In that case the party moving for summary judgment was able to raise, for the first time in his reply, the argument that the non-movant had failed to support their claim of employment discrimination with any evidence of disparate impact. When the non-movant pointed out that this argument was being improperly raised for the first time in a reply, the trial court ruled that if the non-movant had wanted to rely on evidence of disparate impact, then it was incumbent on him to raise it in his response to the motion. On appeal, this court rejected the trial court's conclusion, noting that "the trial court's action essentially put the burden on White to show that there was an issue of material fact." *Id.* at 30. The court further stated that "[t]his shifting of the burden is not supported by case law." *Id.* As in the *White* case, the trial court in the case *sub judice* also relied on a claim, first raised in a reply, that the non-movant had failed to produce evidence as to some element of his case.

▪ The party moving for summary judgment has the burden of establishing the non-existence of any issues of material fact. *See Robert Simmons Const. Co. v. Powers Regulator Co.*, Ky., 390 S.W.2d 901 (1965), and *Barton v. Gas Service Co.*, Ky., 423 S.W.2d 902 (1968). A motion for summary judgment is treated very similar to a motion for a directed verdict in cases where the moving party is the same party

who has the burden of proof at trial. *Barton*, 423 S.W.2d at 904. However, the similarity ends where the movant is the party without the burden at trial. *Id.* In such cases,

> [T]he burden to show that there is no genuine issue of material fact rests on the party moving for summary judgment, whether he or his opponent would at trial have the burden of proof on the issue concerned; and rests on him whether he is by it required to show the existence or non-existence of facts.

*Id.* at 905. In the case *sub judice*, the appellees filed a motion for summary judgment. Thus, they had the initial burden of showing the non-existence of any issues of material fact.

▪ "[U]nless and until the moving party has properly shouldered the initial burden of establishing the apparent non-existence of any issue of material fact," the non-movant is not required to offer evidence of the existence of a genuine issue of material fact. *Robert Simmons*, 390 S.W.2d at 905. Thus, in order for the Goffs to have had the burden of coming forward with evidence as to the existence of a material issue of fact, the appellees would first have had to "shoulder the initial burden" as to the non-existence of any genuine issues of material fact.

▪ The appellees allege that the Goffs fail to produce expert testimony sufficient to support the necessary elements of their claims. However, the appellees neither pointed to any evidence of record nor presented any expert evidence that would indicate the Goffs could not produce such evidence. Rather, they merely stated that as of the time the reply was filed, the Goffs had failed to produce such expert testimony. A similar argument was rejected in the *Barton* case. 423 S.W.2d at 905. In reversing the trial court, the *Barton* court stated:

In this case we have concluded that the judgment was premature and should not have been granted because, although the facts and evidence thus far developed do not establish the existence of a genuine issue of material fact, neither do they establish the non-existence of such an issue.

*Id.* at 904. In short, where the movant fails to meet its initial burden, a summary judgment should not be granted even if the non-movant has failed to produce sufficient evidence as to each element necessary to establish its claim. Such is the case herein.[6]

■ Furthermore, even if the appellees had shouldered their burden of initially establishing the non-existence of genuine issues of material fact, there was sufficient evidence of record to establish the existence of such issues. Citing to the depositions of the Goffs and Justice, as well as to responses to interrogatories, the Goffs assert that they have named experts capable of addressing fact issues. Further, the Goffs maintain that the case has numerous fact witnesses from both medical and legal professions who could provide first-hand testimony concerning the issues. Finally, the Goffs contend that they provided correspondence to the appellees' counsel which provides further information as to the experts and opinions concerning the issues.

As noted in the *Tarter* case, to successfully resist a summary judgment motion once the non-movant has the burden, the non-movant must "show in some way that there would be evidence upon the trial to create a genuine issue on the fact." 343

S.W.2d at 379. Also, the *Neal* court stated that "appellant would have had a case warranting a trial if the availability of any medical testimony had been shown." 426 S.W.2d at 478. In both cases, the non-movant was not required to produce evidence sufficient to succeed at trial; rather, the focus was on demonstrating the availability of sufficient evidence to create a genuine issue of material fact for trial. The evidence cited by the Goffs, while not sufficient to establish the necessary elements at trial, demonstrates that such evidence exists.

Finally, even if the appellees had shouldered their initial burden, and even if the Goffs had failed to establish sufficient evidence as to each element which requires expert testimony, then the appellees still would not have been entitled to summary judgment because nothing then in the record precluded the Goffs from producing such evidence in the future. As noted by the Goffs, summary judgment is proper when it is manifest that the party against whom the judgment is sought could not strengthen his case at trial. *See American Ins. Co. v. Horton,* Ky., 401 S.W.2d 758 (1966). However, that is not the case herein.

The appellees argued that the Goffs had yet to place sufficient expert testimony in the record to establish their claims. The appellees did not argue that such evidence could not be produced, nor did they present expert evidence of record which supports their claims that (1) the facts will not support negligence claims against either the hospital or Dr. Pearson, and (2) the

6. A summary judgment would be appropriate where the movant shoulders his initial burden and the non-movant fails to counter with evidence sufficient to show the existence of a genuine issue of material fact. *Tarter v. Arnold,* Ky., 343 S.W.2d 377 (1960); *Neal v. Welker,* Ky., 426 S.W.2d 476 (1968). While the appellees claim that the record in the underlying medical malpractice case and the deposition of Dr. Mandelbaum were devoid of evidence indicating negligence on the part of the hospital or Dr. Pearson, the appellees failed to submit either the underlying case record or the deposition of Dr. Mandelbaum into the record to support their summary judgment motion.

facts will not support claims of negligence or damages on the Goffs' claims of legal malpractice.[7] To the contrary, the appellees have acknowledged that the Goffs have provided, both in their responses to interrogatories and in the letters to counsel, evidence that such testimony is available.

We reverse the summary judgment entered by the Boyd Circuit Court and remand the case for further proceedings.

ALL CONCUR.

---

7. The failure of the appellees to submit either the underlying case file or the deposition of Dr. Mandelbaum into the record is of particular significance in this regard.