RENDERED: SEPTEMBER 17, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1386-MR

CHARLIE W. GORDON                                         APPELLANT

                         APPEAL FROM SHELBY CIRCUIT COURT
v.                   HONORABLE CHARLES R. HICKMAN, JUDGE
                            ACTION NO. 19-CI-00579

ERIC T. GORDON                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; MAZE AND K. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE: Charlie W. Gordon appeals from a Shelby Circuit

Court opinion and order granting summary judgment to his brother, Eric T.

Gordon. A dispute arose between the brothers over the medical and financial

affairs of their mother, Effie Gordon, now deceased, for whom Eric served as

power of attorney (POA). Charlie filed suit against Eric, contending that Effie was

not competent to execute the POA and raising multiple other claims, including fraudulent misrepresentation, trespass, and defamation. Upon review, we affirm.

Following his divorce in 2015, Charlie began residing with Effie at her house on Hinkle Lane in Shelbyville, Kentucky. Although Charlie did not pay rent or utilities, he purchased groceries and other supplies for the household on a biweekly basis totaling approximately $300 to $400 per month.

In 2018, Effie's physical and mental health began to decline. According to Charlie, she threw a heavy lamp at him and tried to choke him with a scarf. He and Eric discussed their mother's situation and Eric agreed to facilitate the payment of the mortgage and the utilities on the Hinkle Lane home by setting up automatic payment for these expenses. On April 12, 2018, Effie executed a POA that gave Eric the authority to handle her financial affairs and medical treatment. Eric did not inform Charlie of the POA.

Eric also arranged for their mother's mail to be forwarded to his address. According to Charlie, the mail was forwarded under a "family move" order which did not distinguish first names on the mail. Consequently, Charlie's mail was occasionally forwarded to Eric. Eric arranged for Charlie to get his mail by sending it to him in a flat rate shipping box or by dropping it off at the Hinkle Road residence. Charlie apparently made no effort to have the forwarding order changed to deliver his own mail to the Hinkle Road residence.

The brothers disagreed about the severity of Effie's dementia. Charlie believed Eric was not acting quickly enough to have Effie's mental state evaluated and he sought a mental inquest warrant as her condition deteriorated. According to Charlie, Effie's dementia led her to damage and destroy many items in the Hinkle Lane house. In October 2018, following a period of hospitalization, Effie was evaluated for dementia and moved into a nursing home facility in Indiana. Charlie continued to reside in the Hinkle Lane house. Prior to Effie's hospitalization, Charlie had paid $975 to catch up on late mortgage payments on the house. On January 1, 2019, he entered into a lease agreement with Effie, facilitated by Eric acting as POA, in which Charlie agreed to make monthly mortgage payments on the home of approximately $440.

Charlie thereafter failed to make the payments for several months. The mortgage company sent him a letter to the Hinkle Lane address terminating the lease and returning one of his checks for insufficient funds. The correspondence was forwarded to Eric, who sent it to Charlie at his work address in Louisville. Charlie is employed as an attorney at a firm that specializes in creditor law. The letter was opened by the mail room workers, who assumed it was correspondence related to the firm's business. Charlie contends that the contents of the letter were deeply embarrassing to him and defamatory.

Charlie filed a complaint against Eric in Shelby District Court on August 23, 2019. That complaint is not in the record. At some point after the action was filed, Eric entered the Hinkle Lane residence while Charlie was not there. According to Charlie, he was usually away at work from approximately 8:00 a.m. to 6:00 p.m. His affidavit states that he set up a chair and towel at the front door so he could tell if anyone had entered the house when he was not at the residence. He explained that Eric had a key to the house and Charlie "did not know what he might do given [they] were in the middle of litigation." According to Eric, he went to the house to drop off some mail for Charlie. The mailbox was stuffed to overflowing and he noticed a foul odor around the house. He received no response when he knocked on the door. He looked in the window and noticed that the door had been barricaded and the house looked ransacked. He then briefly entered the house to ascertain if everything was satisfactory.

The district court dismissed all the claims in the complaint for lack of jurisdiction, except for Count 1, which challenged Effie's competency to execute the POA under Kentucky Revised Statutes (KRS) 457.160. Charlie then filed a complaint in Shelby Circuit Court on November 1, 2019, which incorporated the district court claims. The district court stayed the action until the resolution of the circuit court case.

-4-

The circuit court complaint included the following claims: a petition for a declaration of rights that the POA was void because Effie lacked capacity to execute it and that the lease agreement on the house entered into and signed by the POA was void; fraudulent misrepresentation and omission related to forwarding the mail; negligence *per se* regarding the forwarding of the mail; invasion of privacy and violation of landlord-tenant laws in connection with Eric entering the Hinkle Lane residence without Charlie's consent; and defamation in connection with the mail containing the canceled check and lease termination notice which was opened at Charlie's workplace. Eric filed an answer and counterclaim seeking to recover any funds Charlie had taken from Effie not in her best interest, including any money he owed her for unpaid rent and the expenses incurred by his waste of the real property at Hinkle Lane. Eric filed a motion for summary judgment on March 9, 2020. Effie passed away on May 17, 2020. The circuit court granted the motion for summary judgment on August 17, 2020. This appeal by Charlie followed. Further facts will be set forth below as necessary.

In reviewing a grant of summary judgment, our inquiry focuses on "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); Kentucky Rules of Civil Procedure (CR) 56.03. The trial court must view the record "in a light most

-5-

favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). On the other hand, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* at 482. "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue *de novo* because only legal questions and no factual findings are involved." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004).

Charlie argues that Eric's motion for summary judgment failed to meet the "burden of establishing the non-existence of any issues of material fact." *Goff v. Justice*, 120 S.W.3d 716, 724 (Ky. App. 2002). He contends that it lacked legal analysis, citations to authority, and that its argument was cursory. A successful motion for summary judgment need not contain extensive citations to legal authority or complex legal analysis. We have reviewed Eric's motion and conclude that it was adequate to support the entry of summary judgment in this case.

Next, Charlie argues that the circuit court erred in ruling that the district court properly retained jurisdiction over the claim that Effie lacked mental capacity to execute the POA. The original jurisdiction of the circuit and district

courts is determined by the legislature. *Abell v. Reynolds*, 191 S.W.3d 1, 3 (Ky. App. 2006) (citing KY. CONST. §§ 112(5) and 113(6); KRS 23A.010). "When the legislature does not specifically assign jurisdiction of a particular matter to the district court, jurisdiction rests in the circuit court." *Id*. (citing *Hyatt v. Commonwealth*, 72 S.W.3d 566, 577 (Ky. 2002)). KRS 24A.020 provides that "[w]hen jurisdiction over any matter is granted to District Court by statute, such jurisdiction *shall* be deemed to be exclusive unless the statute specifically states that the jurisdiction shall be concurrent." *Id*. (Emphasis added.) If jurisdiction is concurrent, "once a court of concurrent jurisdiction has begun the exercise of that jurisdiction over a case, its authority to deal with the action is exclusive and no other court of concurrent jurisdiction may interfere with the pending proceedings. 20 Am. Jur. 2d, Courts, s 128, page 481." *Akers v. Stephenson*, 469 S.W.2d 704, 706 (Ky. 1970).

The district court's reason for retaining jurisdiction over this claim was KRS 457.160, which provides a list of those who "may petition a District Court to construe a power of attorney or review the agent's conduct, and grant appropriate relief[.]" KRS 457.160(1). That statute further provides that "[u]pon motion by the principal, the court shall dismiss a petition filed under this section, unless the court finds that the principal lacks capacity to revoke the agent's authority or the power of attorney." KRS 457.160(2). Plainly, the statute

-7-

contemplates the district court's making a determination regarding the capacity of the principal when, as in this case, a petition is brought challenging the conduct of a POA. Under the foregoing authority, the circuit court correctly held that the district court retained jurisdiction over this claim.

Charlie nonetheless argues that KRS 24A.120 specifically excludes this claim from the district court's jurisdiction. KRS 24A.120 was enacted in part to confer exclusive jurisdiction upon the district courts in "[m]atters involving probate, except matters contested in an adversary proceeding. Such adversary proceeding shall be filed in Circuit Court in accordance with the Kentucky Rules of Civil Procedure and shall not be considered an appeal[.]" KRS 24A.120(2); *Karem v. Bryant*, 370 S.W.3d 867, 870 (Ky. 2012).

Charlie contends that a genuine dispute exists as to whether his challenge to the validity of the POA is "adversarial" and thereby properly before the circuit court. But the statute expressly applies only to "[m]atters involving probate," which is defined as "[t]he judicial procedure by which a testamentary document is established to be a valid will; the proving of a will to the satisfaction of the court." *Probate*, BLACK'S LAW DICTIONARY (11th ed. 2019). There are no matters involving probate raised in the case before us and consequently KRS 24A.120 does not confer jurisdiction on the circuit court in this matter.

Next, Charlie argues that summary judgment should not have been granted on his claims of fraudulent misrepresentation and omission. Charlie claims the evidence in the record shows that after the episode when his mother attacked him, Eric planned to set up automatic payment of her bills but made no mention of getting a POA. Charlie claims that when he moved in with his mother following his divorce, he was her tenant and had a verbal contract with her to purchase groceries and household supplies every other week. He claims that Eric, acting as his mother's POA or agent, unilaterally modified the existing verbal agreement and changed Charlie from a tenant to a caregiver and doubled his obligation by requiring him to purchase groceries and supplies every week. Charlie contends that Eric was under a duty as POA to provide support for Effie, including the provision of food. He contends that Eric failed to do so and should have informed Charlie of the POA and contracted with him to purchase the food.

Although this argument is somewhat unclear, there is no legal foundation for the claim that Eric's duty as POA included the provision of food for Effie. There is also no explanation of how he was able to compel Charlie to purchase groceries and supplies every week.

Charlie further argues that summary judgment was inappropriate on his claim that Eric falsely forwarded his mail along with his mother's. He contends that Eric executed a "family move" forwarding order for Effie,

representing that he had the authority to forward the mail of everyone at the Hinkle Lane residence with the surname Gordon. Charlie contends that it was false that everyone with the surname Gordon needed their mail forwarded and that Eric did not have the authority to authorize the mail to be forwarded. But there is no evidence that Eric arranged for the mail to be forwarded with any nefarious purpose in mind; furthermore, Charlie acquiesced in the arrangement and provides no evidence that he contacted the post office in order to have his own mail sent to him.

Charlie also argues that the circuit court failed to consider that the record shows Eric entered Charlie's residence without notice. KRS 383.615(2) provides that "[a] landlord may enter the dwelling unit without consent of the tenant in case of emergency." Charlie claims there is an issue of fact regarding whether an emergency existed to justify Eric's entry into the home. Specifically, he argues that even if the mailbox was overstuffed and overflowing, as described by Eric, the mailbox is at least 75 to 100 feet from the house and consequently its condition could not constitute an "emergency" necessitating Eric's entry into the house. Charlie does not, however, challenge Eric's claim that there was a foul smell around the house, the doors were barricaded, and that the inside of the house was in disarray. In light of these unrefuted facts, the circuit court did not err in

granting summary judgment on Charlie's claim that Eric violated the Landlord and Tenant Act.

Charlie argues that the circuit court erred in granting summary judgment on his defamation claim, which involved the mail room employees opening the forwarded letter from the lessee bank containing his returned check. The circuit court held as a matter of law that the publication element of the defamation claim was not met.

> The requisite elements for a defamation claim are: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 281-82 (Ky. 2014), *as corrected* (Apr. 7, 2015) (internal quotation marks and citations omitted). The element of publication occurs when the defamatory material "is intentionally or negligently communicated to someone other than the party defamed." *Id*. at 282 n.8 (citation omitted). The circuit court held that there was no intentional or negligent communication to a third party because Eric forwarded the letter solely to Charlie and the fact that Charlie's mail was opened and potentially viewed by others due to the mail procedures at his law firm could not be construed as an effort by Eric to intentionally or negligently publish the letter to third parties. We agree with the

circuit court's analysis and conclude that it did not err in granting summary judgment on this claim as a matter of law.

Charlie also alleges that the circuit court improperly weighed the evidence in Eric's favor. First, he contends the circuit court's order mistakenly stated their father's first name was "Charlie" to account for the mail being forwarded, even though Charlie had presented evidence that first names were not relevant to the mail forwarding order. He claims the circuit court's misinterpretation implied Charlie bore the burden of correcting the mail forwarding order. Second, he contends the circuit court improperly accepted Eric's suggestion that he entered the Hinkle Lane house because he feared foul play by suicide. Neither of these two claims rise to the level of creating a genuine issue of material fact. "A party's subjective beliefs about the nature of the evidence is not the sort of affirmative proof required to avoid summary judgment." *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. App. 2007). Furthermore, "[n]ot every issue of fact or conflicting inference presents a genuine issue of material fact that requires denial of a summary judgment motion." *Grass v. Akins*, 368 S.W.3d 150, 153 (Ky. App. 2012).

Charlie also contends that, in addressing his invasion of privacy claim, the circuit court improperly analyzed it as the form of the tort which concerns "publicity that unreasonably places the other in a false light before the public[,]"

whereas Charlie was alleging "unreasonable intrusion upon the seclusion of another[.]" *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981). Under either theory, however, Charlie did not succeed in showing the existence of a genuine issue of material fact.

Finally, Charlie alleges that Eric's motion for summary judgment was made in bad faith, repeating many of the earlier arguments which we have already reviewed and found to be without merit. His remaining arguments in this regard are similarly without merit.

For the foregoing reasons, the opinion and order granting summary judgment is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Charlie W. Gordon, *pro se*
Louisville, Kentucky

BRIEF FOR APPELLEE:

Joseph D. Buckles
Lexington, Kentucky