## Middleton et al. v. Frances.

(Decided Dec. 21, 1934.)

C. C. GRASSHAM for appellants.

BEN S. ADAMS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

At 2:15 p. m. November 4, 1933, Curlin Frances was injured in an automobile collision on Jefferson street in Paducah, Ky., for which he sued A. S. Thompson as the owner of the Thompson Transfer Company, Dorothy St. Clair as his driver, the People's Taxie Company, and W. H. Flint and Earl L. Middleton, as the owners of it. The court directed a verdict for Dorothy St. Clair and A. S. Thompson and submitted to the jury the question of the liability of Flint, Middleton, and the People's Taxie Company, which returned a verdict for $1,500 for Frances. Judgment followed, a new trial was denied, and Flint, Middleton, and the People's Taxie Company have appealed.

Frances testifies he called a taxi at 1:25 p. m. and that at 1:35 p. m. he was picked up by the taxi in which he was riding when he was injured. This taxi had painted upon one side of it the word "Peoples" and in figures "111."

### The People's Taxie Company.

On May 9, 1933, Earl L. Middleton and W. H. Flint filed in the office of the clerk of the McCracken county court notice of their intention to engage in the business of public conveyance under the name and style of People's Taxie Company (note the name). In a few weeks Middleton sold out to Flint, who continued the business without ever filing a new notice, and for four months before this accident Middleton had had nothing to do with the business.

### The Car In Question.

This particular car was not owned by Flint, by Middleton, or by the People's Taxie Company, but was owned by L. L. Ashley, who paid rent to the People's Taxie Company for the privilege of operating from their

office. Ashley had the words and figures "Peoples Taxi-cab Company 111" (note · the difference in the name) painted on it and he employed Ed Harris to drive it upon a commission. The People's Taxie Company, or Flint as owner of it, received no part of the earnings of this machine, did not employ the driver, Harris, had nothing to do with the operation of this car, and only collected rent from Ashley for the privilege of putting his car in and operating it in the taxi business.

### Who Is Responsible?

It was the negligence of Harris that caused this injury, for it Harris is primarily responsible, and Ashley, his master, is also responsible under the doctrine of respondeat superior. Neither has been sued, and our question is: Was Harris in the operation of this car also ostensibly the agent of the People's Taxie Company? An "ostensible agent" is thus defined in 2 C. J. p. 427, sec. 14:

> "An apparent or ostensible agent is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him."

Has not the People's Taxie Company by allowing Harris from and after July 20, 1933, to operate this car from its central office, to cruise about over the city with the name "Peoples Taxi-cab Company" displayed upon it—though it be admitted he was doing all this for Ashley—been guilty of such want of ordinary care, and so held him out and so allowed Harris to hold himself out as to make Harris its agent as to third parties who perhaps took passage with him as a result of the appearances it allowed him to make? We think it has. Such seems to be the rule. See Section 267, Restatement of the Law of Agency, where this illustration is given:

> "P, a taxicab company, purporting to be the master of the drivers of the cabs, in fact enters into an arrangement with the drivers by which the drivers operate independently. A driver negligently injures T, a passenger, and also B, a person upon the street. P is not liable to B. If it is found that T relied upon P as one furnishing safe drivers, P is subject to liability to T in an action of tort."

That seems to be the case.

See also Rhone v. Try-me Cab Co., 65 Fed. (2d) 834 and Lassen v. Stamford Transit Co., 128 Atl. 117. Denker Transfer Co. v. Pugh, 162 Ky. 818, 173 S. W. 139.

## Middleton's Situation.

At the outset Middleton was a member of the People's Taxie Company. After two months he retired, but gave no notice of his retirement. If Frances had shown he had previous to such retirement done business with the old firm and he had had no notice of Middleton's retirement, Middleton would be responsible to Frances. See Reid-Murdock & Company v. Model Meat & Grocery Co., 204 Ky. 795, 265 S. W. 322; Lieb v. Craddock, 87 Ky. 525, 9 S. W. 838, 10 Ky. Law Rep. 570; and 47 C. J. p. 1035, Sec. 599. Frances failed to make such showing; therefore a directed verdict for Middleton should have been given.

## The $1,500 Judgment.

Dr. V. L. Powell, the assistant chief surgeon at the Illinois Central Hospital in Paducah, dressed the wound on the head of Mr. Frances. It was of such minor importance that the doctor testifying about it, less than four months thereafter, was unable to say whether he sewed it up or drew it together with sticking plaster. He described it as not very serious. Frances was allowed to go home after his wound was dressed. His wound healed up, but now to give his hurts some appearance of gravity, Frances claims he has lost the sight of his right eye, yet admits he had not consulted a doctor about his eyes since the accident.

Under such evidence there is but one way to account for this verdict, and that is the one that first occurred to us when it was read, and that is that it is the result of passion and prejudice rather than proof. For this the judgment is reversed and other questions presented are reserved.

The whole court sitting.