**James P. KAZE et al., Appellants,**

v.

**James W. COMPTON et al., Appellees.**

Court of Appeals of Kentucky.

Sept. 23, 1955.

Rehearing Denied Nov. 18, 1955.

S. J. Stallings, Louisville, for appellants.

W. Scott Miller, Sr., W. Scott Miller, Jr., Louisville, for appellees.

STANLEY, Commissioner.

In November, 1950, the appellants, James P. Kaze and wife, purchased of the appellees, James W. Compton and Sarah Compton, a residence on Tuberose Avenue in the southern suburbs of Louisville for $7,100. In this action of deceit for damages based on the concealment of the fact that a twelve inch drain tile ran beneath the house, which caused water to accumulate under the house and in the yard, a verdict for the plaintiffs for $2,600 was returned. The court sustained a motion for a new trial and overruled several motions of the plaintiffs seeking to have the judgment reinstated or the case set down for another trial. There is no motion for a summary judgment in the record, but an order recites that the defendants moved for such a judgment and the court sustained it upon a consideration of the pleadings and evidence heard on the trial. He concluded that there was no "genuine issue as to any material fact and no controversial question as a matter of fact" and that the defendants were entitled to a judgment as a matter of law. CR 56.03; Watts v. Carrs Fork Coal Co., Ky., 275 S.W.2d 431. The conclusion rests on the view that the plaintiffs had relied only on proof that there was a drainage tile under the house which the defendants knew about but had not disclosed to them, and that water had come from this tile under the house. The court was of the opinion that to recover damages the plaintiffs must have pleaded and proved that the defendants knew there was a defect in the drainage tile and knew water would escape from it and accumulate under the house; moreover, that the plaintiffs had not proved that the water had in fact come from this tiling. The appellants construe CR 56.03 as requiring an interval of at least ten days after service of a motion for a summary judgment, hence, submit the court was without authority to render the same on the day the motion was made.

The plaintiffs "strenuously objected" to all the several orders but did not offer or suggest a desire to file an affidavit of merit in opposition to the summary judgment or ability to present any further evidence in support of their cause. We pass over the technical question of premature entry of the summary judgment and look to the record and grounds for the court's action.

The complaint did not use the term "defective" in describing the tiling but did charge that the defendants had represented to the plaintiffs that the lot was like the surrounding land insofar as natural drainage of the surface water was concerned; that they knew there was a large drainage tile buried in the ground running the full length of the lot and directly under the house and had not disclosed that fact; that the space beneath the house becomes flooded with water and sewage by reason of the drainage tile. It is a familiar rule that after a verdict the pleadings will be liberally construed and defects therein disregarded unless they are prejudicial to the substantial rights of the adverse party. Thoenis' Adm'x v. Andrews, 231 Ky. 160, 21 S.W.2d 250. Thus judging the pleading, it seems to us the court should have deemed it sufficient, especially since the pleading was not necessarily determinative. Clay, CR 56.03, p. 503.

With respect to the consideration of the evidence, we think the court rightly regarded the situation as corresponding to that at the close of the case when the motion for a directed verdict was entered. At this stage of the case these proceedings were in advance of a second trial and the inquiry was whether the evidence which was part of the record revealed a genuine issue of fact or facts, particularly of fraudulent concealment of a condition which made the property worth less than the purchasers paid for it.

There is no contradiction that the plaintiffs did not know of the existence of this drainage tile before they bought the property. It was in short sections with open, unsealed connections and drained a large area of low and crawfishy land. It was part of a system of drainage which had been installed many years before either by a private owner when the land was used for farming purposes or by the United States Government in the development of Camp Taylor during the first World War. The defendants had acquired several acres of this land and erected forty small houses for the purpose of selling them. None of them had a basement. In the spring of 1950 workmen engaged in laying a gas pipe line in the street in front of the lot later sold the Kazes broke a section of the drainage line. Both the defendants then saw that the line ran across the street and through this particular lot and that it was clogged up. A witness testified that he had looked at this Kaze lot and had seen water bubbling up from the ground as if from a spring at a spot over which the house was soon thereafter erected. For this reason he had refused to buy the lot. Many witnesses testified they had seen water bubbling up under the house after the Kazes had bought it. After a hard rain it comes up as if from a spring or a force pump. The adjoining lots had no such conditions. In a deposition taken as on cross-examination, one of the defendants admitted the property had been previously sold to another person and he had repudiated the sale, which, however, the defendants insisted was not on account of the condition now complained of. After they had bought the house and lot the plaintiffs had called the defendants and showed them water bubbling up in the yard and complained about the entire situation. The defendants undertook to remedy the condition by having a deep catch-basin or well dug on the rear of the lot, but it was ineffective as it soon filled up with water. The drainage tile in the yard was found to be full of mud with only a space of one or two inches open for the passing of water.

The case had been submitted on instructions which predicated defendants' liability on their knowledge of the existence of the hidden field tile, their failure to disclose that fact to the purchasers and the latter's ignorance of it, and that the tiling ran under the building, and the plaintiffs had suffered damage "solely by reason of the fact that the tile extended under the property." The plaintiffs proved the predicate of liability. The defendants' evidence was of their absence of knowledge of the tile in the lot when it was sold; that the water did not come from the tiling, and the value was not affected.

 It cannot be controverted that actionable fraud or misrepresentation by a vendor may be by concealment or failure to disclose a hidden condition or a material fact, where under the circumstances there was an obligation to disclose it during the transaction. If deception is accomplished, the form of the deceit is immaterial. And the legal question is not affected by the absence of an intent to deceive, for the element of intent, whether good or bad, is only important as it may affect the moral character of the representation. Adkins v. Stewart, 159 Ky. 218, 166 S.W. 984; Lose v. Salesberg Realty Co., 233 Ky. 370, 25 S.W.2d 1032; Dennis v. Thomson, 240 Ky. 727, 43 S.W.2d 18; Curd v. Bethell, 248 Ky. 127, 58 S.W.2d 261.

 The question is resolved into whether the plaintiffs' evidence was of suppression of a material fact which substantially affected their interests as purchasers. The criterion of materiality is whether it probably influenced the making of the contract, that is, whether the plaintiffs would have purchased the property for the price paid had they been apprised of these conditions. This principle was laid down many years ago in Shackelford v. Hendley's Ex'rs, 1 A.K.Marsh. 496, 8 Ky. 496, 10 Am.Dec. 753. See also Glass Coffee Brewer Corp. v. Embry, 292 Ky. 483, 166 S.W.2d 818. In Weikel v. Sterns, 142 Ky. 513, 134 S.W. 908, 909, 34 L.R.A.,N.S., 1035, Weikel built a house over a cesspool and sold the

property to Sterns, who had no knowledge of the condition. In sustaining a judgment for the purchaser in his action to recover damages for deceit, we responded to the argument that the vendor had acted in good faith and without a knowledge of the real condition by saying that the evidence showed that "he knew enough facts to put a reasonable man on notice, and when he sold an innocent purchaser the house, causing him a loss by reason of the concealment of the facts, the loss should fall on him and not on the purchaser." We rested affirmance of the judgment "on the ground that the facts which he knew were sufficient to apprise a man of ordinary prudence of the truth and to impose upon him the duty to inform the purchaser of the situation which he had concealed from him."

■ The conditions in the present case are not nearly so extreme as in the Weikel case. There the concealed condition was inherently damaging while here the condition was potentially so. But it seems to us the condition was substantial or vital enough to place a duty upon the vendors to disclose it. 37 C.J.S., Fraud, § 16; Hays v. Meyers, 139 Ky. 440, 107 S.W. 287, 32 Ky.Law Rep. 832, 17 L.R.A.,N.S., 284.

■ The materiality and importance of the hidden drainage line under the house and the resulting depreciation in value are reflected in the unanimous verdict of the jury that the difference was $2,600, that is, that with knowledge of the condition revealed, the property was worth only $4,500 instead of $7,100, which the purchaser had paid for it without having such knowledge. We think the verdict may be considered, for it is to be borne in mind that the question before the court when the summary judgment was rendered was whether there had been or was under the law a real or genuine issue of a material fact to be determined by the triers of fact. As stated by Judge Clay in his work on Kentucky Civil Rules of Practice and Procedure, Sec. 56.03, p. 502, "It has been held under FRCP 56 [28 U.S.C.A.] that the moving party should not succeed unless the facts conceded show a right to judgment with such clarity as to leave no room for controversy, and show affirmatively that the adverse party cannot prevail under any circumstances." Schaeffler v. City of Park Hills, Ky., 279 S.W.2d 21. It is said in 6 Moore's Federal Practice, Sec. 5602(7) that in ruling on a motion for summary judgment, "the court should remember that the movant has the burden of demonstrating clearly the absence of any genuine issue of material fact, that the court should not draw factual inferences in favor of the moving party and should not resolve a genuine issue of credibility." See Proctor v. Cranfill, Ky., 280 S.W.2d 494.

■ We are of opinion, therefore, the summary judgment should not have been rendered.

■ We come to the question of whether or not the court properly sustained the motion for a new trial. The grounds were the same as those upon which summary judgment was rendered, namely, that it was necessary for the plaintiffs to have proved (1) that the defendants knew, or should have known from all the circumstances, that the drainage tile was defective, and (2) that water collecting under the house in fact came from the tiling. It seems to us the evidence was sufficient to take the case to the jury on both points and that the court erred in setting aside the verdict.

■ The appellees submit the purchasers should have mitigated the damage. Assuming that the rule of mitigation is applicable, we may observe that the vendors undertook to remedy the condition but substantially failed, and the plaintiffs had filled in and graded the back lot, but water continued to accumulate. And concerning the claim that any damage was of a temporary character, we may add that the failure of the defendants to improve the condition indicates permanency. Moreover, the question of the character of the damage or condition was submitted by an instruction that if the jury believed the damage, if any, was of a temporary nature and could be reason-

ably repaired, the award should be the reasonable cost of restoration.

The judgment appealed is reversed with directions to re-instate the original judgment for the plaintiffs.