**PAINTSVILLE HOSPITAL
COMPANY, Movant,**

v.

**Jake ROSE, Administrator of the
Estate of Grimsey Rose,
Deceased, Respondent.**

Supreme Court of Kentucky.

Jan. 17, 1985.

Michael J. Schmitt, Paintsville, for movant.

John H. Hogin, Hogin, Guyton, London & Montgomery, Knoxville, Tenn., F.C. Bryan, Bryan & Fogle, Mount Sterling, for respondent.

Edgar A. Zingman, Susan T. Barnett, Mary Ann Main, Wyatt, Tarrant & Combs, Louisville, for amicus curiae.

LEIBSON, Justice.

The issue is whether the appellant, Paintsville Hospital, can be held liable on principles of ostensible agency or apparent authority for the negligence of a physician who was not employed by the hospital but who furnished treatment in the emergency room which was provided by the hospital and open to the public.

The complaint alleges that plaintiff's decedent, Grimsey Rose, age sixteen, was found unconscious on the street in Paintsville, Kentucky, with an impact point on his left jaw and his crushed glasses nearby; that he was taken from there to the emergency room at Paintsville Hospital by ambulance, and treated in the emergency room by Dr. K.J. Ikramuddin, who negligently failed to diagnose his condition.

Dr. Ikramuddin was a private physician, and not an employee of the hospital. However, she was on the staff of the hospital and performed emergency room services

according to a roster prepared by the hospital administrator. Her work in the emergency room was performed on an "on-call" basis, so she was called by the hospital to attend Grimsey Rose upon his arrival. Dr. Ikramuddin is charged with negligence causing the death of Grimsey Rose in failing to properly read head x-rays resulting in failure to diagnose a skull fracture with subdural hematoma.

According to Paintsville Hospital's *Pretrial Memorandum,* when the parents of Grimsey Rose arrived at the emergency room, the doctor discussed the problem of a possible drug reaction or a head injury with them and obtained permission to admit the patient to the hospital for overnight observation. She then arranged for his post-admission treatment by a different physician because her specialty was obstetrics and gynecology, and she then obtained payment by check for her services.

The trial court granted summary judgment to the hospital "on the issue of whether or not the hospital was vicariously liable for the acts and/or omissions, if any, of Dr. Kamar J. Ikramuddin." The trial court's finding that Dr. Ikramuddin had no actual agency relationship with the hospital at the time the doctor treated Grimsey Rose in the emergency room is not in dispute. The finding that no "ostensible agency" existed is the subject of this appeal. The record is devoid of reasons for or against this finding, except for the fact that the parents tried to employ the doctor to continue on with the care and treatment of the decedent beyond the time he was seen by her in the emergency room, and were refused, from which the trial court concludes that "the family of the decedent considered Dr. Ikramuddin to be a physician independent of the control of the hospital."

The Court of Appeals reversed the summary judgment. We affirm.

■ The proper function for a summary judgment in a case of this nature "is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Roberson v. Lampton,* Ky., 516 S.W.2d 838, 840 (1974). It is only proper where the movant shows that the adverse party could not prevail under any circumstances. *Kaze v. Compton,* Ky., 283 S.W.2d 204 (1955). Summary judgment is premature and should not be granted, "although the facts and evidence thus far developed do not establish the existence of a genuine issue of material fact, [where] neither do they establish the non-existence of such an issue." *Barton v. Gas Service Co., Inc.,* Ky., 423 S.W.2d 902, 904 (1968). In short, it is not a substitute for trial, nor is it the functional equivalent of a motion for directed verdict.

■ With this background it is clear that the record in the present case does not support granting a summary judgment if ostensible agency as alleged in the amended complaint is a viable legal theory under our law. The appellant claims that the record fails to establish that the decedent or his parents relied on the fact that Dr. Ikramuddin was an employee of the hospital in accepting her treatment. Neither does it refute it. Further, the cases applying the principle of ostensible agency to the hospital/emergency room physician situation, without exception, do not require an express representation to the patient that the treating physician is an employee of the hospital, nor do they require direct testimony as to reliance. A general representation to the public is implied from the circumstances. Without exception evidence sufficient to invoke the doctrine has been inferred from circumstances similar to those shown in the present case, absent evidence that the patient knew or should have known that the treating physician was not a hospital employee when the treatment was performed (not afterwards).

The landmark case applying the principle of ostensible agency to physicians not employed by the hospital but furnished through the institutional processes is *Seneris v. Haas,* 45 Cal.2d 811, 291 P.2d 915 (1955), where it was applied to an anesthesiologist. Since then few courts have

failed to recognize the soundness of this application, and the concept has been generally applied not only to anesthesiologists, but to pathologists, radiologists, and emergency room physicians, all of whom share the common characteristic of being supplied through the hospital rather than being selected by the patient. Our research reveals the following cases *applying ostensible agency to emergency room physicians* in circumstances similar to the present case, and none to the contrary:[1]

1) *Adamski v. Tacoma General Hospital*, 20 Wash.App. 98, 579 P.2d 970 (1978).

2) *Vanaman v. Milford Memorial Hospital, Inc.*, 272 A.2d 718 (Del.1970).

3) *Hannola v. City of Lakewood*, 68 Ohio App.2d 61, 426 N.E.2d 1187 (1980).

4) *Capan v. Divine Providence Hospital*, 287 Pa.Super. 364, 430 A.2d 647 (1980).

5) *Stewart v. Midani*, 525 F.Supp. 843 (N.D.Ga.1981).

6) *Themins v. Emanuel Lutheran Charity Board*, 54 Or.App. 901, 637 P.2d 155 (1981).

7) *Mehlman v. Powell*, 281 Md. 269, 378 A.2d 1121 (1977).

8) *Irving v. Doctors Hospital of Lake Worth, Inc.*, 415 So.2d 55 (Fla.App.1982).

9) *Edmonds v. Chamberlain Memorial Hospital*, 629 S.W.2d 28 (Ten.App.1981).

10) *Mduba v. Benedictine Hospital*, 52 A.D.2d 450, 384 N.Y.S.2d 527 (App.Div. 1976).

11) *Arthur v. St. Peters Hospital*, 169 N.J.Super. 575, 405 A.2d 443 (1979).

While there are no cases from our court applying the principle of ostensible agency to the present situation,[2] the principle itself is one recognized and of longstanding in Kentucky. In *Middleton v. Frances*, 257 Ky. 42, 77 S.W.2d 425 (1934), we applied this principle to establish the liability of a taxicab company to a passenger where the sole connection between the driver and the taxicab company was the company's name painted on the taxi and rent paid to the company for the privilege of operating it from the company office. The company did not employ the driver and received no part of the earnings from his taxicab. Quoting *Corpus Juris*, we stated:

> "An apparent or ostensible agent is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him." 77 S.W.2d at 426.

The principles of apparent or ostensible agent are discussed at length in *Restatement (Second) of Agency* § 267 (1958):

> "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such."

We cited the same section from the earlier edition of the *Restatement of Agency* with approval in *Middleton v. Frances, supra*. Further, the *Restatement (Second) of Agency* makes the following statement significant to our discussion in § 49, explaining the difference between "Interpretation of Apparent Authority Compared with Interpretation of Authority":

> "(a) manifestations of the principal to the other party to the transaction are interpreted in light of what the other party knows or should know instead of what the agent knows or should know, . . . ."

As stated by the Superior Court of New Jersey in discussing the public's reasonable expectation of emergency room physician

---

**1.** In one case, *Johnson v. St. Bernard Hospital*, 79 Ill.App.3d 709, 35 Ill.Dec. 364, 399 N.E.2d 198 (1979), the court held that the hospital was not liable for the negligence of an emergency room physician, *but* the principle of ostensible agency was not advanced or discussed.

**2.** *Williams v. St. Claire Medical Center*, Ky.App., 657 S.W.2d 590 (1983), from the Court of Appeals, applied the ostensible agency principle to the hospital/nurse anesthetist relationship. There was no Motion for Discretionary Review, so we did not consider the case.

in *Arthur v. St. Peters Hospital*, 169 N.J. Super. 575, 583, 405 A.2d 443, 447 (1979):

"[P]eople who seek medical help through the emergency room facilities of modern-day hospitals are unaware of the status of the various professionals working there."

In these circumstances it is unreasonable to put a duty on the patient to inquire of each person who treats him whether he is an employee or independent contractor of the hospital. *Grewe v. Mt. Clemens General Hospital*, 404 Mich. 240, 273 N.W.2d 429 (1978). Indeed, it would be astonishing for courts to require a patient to ask emergency room personnel such a question considering the usual circumstances of the patient at the time he seeks out the emergency room for treatment.

The realities of the situation calls upon us to interpret ostensible agency as has been done by the courts of sister states, as evidenced by the following quotes:

"Absent notice to the contrary, therefore, plaintiff had the right to assume that the treatment received was being rendered through hospital employees and that any negligence associated with that treatment would render the hospital responsible." *Arthur v. St. Peters Hospital*, 169 N.J.Super. 575, 405 A.2d 443, 447 (1979).

"In our view, the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems." *Grewe v. Mt. Clemens General Hospital*, 404 Mich. 240, 273 N.W.2d 429, 433 (1978).

Kentucky Hospital Association has filed an Amicus Brief in this case. It is apparent from that brief that Kentucky Hospital Association recognizes that the historical view of hospitals as hotels providing rooms, buildings where private medical practitioners treat private patients, represented by *Stacy v. Williams*, 253 Ky. 353, 69 S.W.2d 697 (1934), is no longer viable. This obsolete view of hospitals, deriving from *Schloendorff v. Society of New York Hospital*, 211 N.Y. 125, 105 N.E. 92 (1914), was rejected by that same New York court in *Bing v. Thunig*, 2 N.Y.2d 656, 143 N.E.2d 3, 163 N.Y.S.2d 3 (1957). *Bing* obliterated the former distinction made on agency questions between the physician exercising independent professional judgment and the non-professional hospital employees, and imposed vicarious liability on the hospital for both situations where agency exists.

The circumstances under which the hospital is liable are not unlimited. But the operation of a hospital emergency room open to the public, where the public comes expecting medical care to be provided through normal operating procedures within the hospital, falls within the limits for application of the principles of ostensible agency and apparent authority.

The decision of the Court of Appeals is affirmed.

STEPHENS, C.J., and GANT, LEIBSON and WINTERSHEIMER, JJ., concur.

VANCE, J., files a dissenting opinion in which AKER and STEPHENSON, JJ., join.

VANCE, Justice, dissenting.

I fully recognize that there may be cases in which an ostensible agency may be proved and that until a prima facie case has been made that no genuine issue of fact exists a plaintiff's claim should not summarily be dismissed.

There are two conditions which must be shown to exist before liability can be imposed upon the basis of ostensible agency. First, the ostensible principal must have engaged in conduct of such a nature as to cause a reasonable person to believe that an agency relationship existed, although actually there was no agency. Secondly, the person seeking to impose liability upon one who is ostensibly a principal for the tort of one who is ostensibly, but not actually, an agent must in fact believe that an agency relationship did exist and must act in reliance upon that belief.

*Restatement (second) of Agency* § 267 (1958), cited in the majority opinion, contains the following in Comment (a):

"The mere fact that acts are done by one whom the injured party believes to be the defendant's servant is not sufficient to cause the apparent master to be liable. *There must be such reliance upon the manifestation as exposes the plaintiff to the negligent conduct....*" [Emphasis added.]

"While agency, as between the principal and agent, is a matter of their mutual consent, an agency by estoppel may be created insofar as third persons are concerned—that is, it may arise from acts and appearances which lead third persons to believe that it has been created. Agency by estoppel may be apparent only and exist because of the estoppel of the principal or agent to deny the same after the third party has *relied* on such appearance, so that such third party would be prejudiced if the fact were shown to be otherwise." [Emphasis added.] 3 Am.Jur.2d *Agency* § 19, p. 429 (1962).

Ostensible agency is agency by estoppel and is to be distinguished from implied agency.

"An implied agency is an actual agency as much as if it were created by express words, and is a fact to be shown or ascertained by inferences and deductions from other facts for which the principal is responsible, while agency by estoppel should strictly be limited to those cases where the authority is not real but apparent.

"Agency by estoppel can be invoked by a third person only when he knew and *relied* on the conduct of the principal, while such knowledge is unnecessary in cases of implied agency since in such case the agent is an actual agent." [Emphasis added.] 2A C.J.S. *Agency* § 52(b), pp. 628–629 (1972).

In *Middleton v. Frances*, 257 Ky. 42, 77 S.W.2d 425 (1934), the Kentucky case cited in the majority opinion as recognizing the principle of ostensible agency, the precise question of reliance by the claimant therein was not discussed in the opinion, but the opinion did allude generally to the fact of reliance upon the ostensible agency as a necessary element in imposing liability upon an ostensible principal.

"Has not the People's Taxie Company by allowing Harris from and after July 20, 1933, to operate this car from its central office, to cruise about over the city with the name 'Peoples Taxi-cab Company' displayed upon it—though it be admitted he was doing all this for Ashley—been guilty of such want of ordinary care, and so held him out and so allowed Harris to hold himself out as to make Harris its agent as to third parties who perhaps took passage with him as a result of the appearances it allowed him to make? We think it has. Such seems to be the rule. See section 267, Restatement of the Law of Agency, where this illustration is given: 'P, a taxicab company, purporting to be the master of the drivers of the cabs, in fact enters into an arrangement with the drivers by which the drivers operate independently. A driver negligently injures T, a passenger, and also B, a person upon the street. P is not liable to B. If it is found that T *relied* upon P as one furnishing safe drivers, P is subject to liability to T in an action of tort.' That seems to be the case." [Emphasis added.] *Id.*, 77 S.W.2d at 426.

In this case, the deceased was found lying unconscious on the streets. He was unconscious when taken to the hospital. I believe a prima facie case was established that the deceased did not, in his condition upon admission, rely upon a belief that the emergency room physician was, in fact, an agent of the hospital. Indeed, the complaint does not even claim that there was any reliance upon an ostensible agency. The physician who originally admitted deceased to the hospital told his parents, who later came to the hospital, that the injuries suffered by their son were outside her field of specialization and recommended that they secure the services of another physi-

cian. The deceased was admitted to the hospital under the care of another physician, and the parents paid Dr. Ikramuddin, not the hospital, for her services.

The majority opinion, in my view, drastically revises the law pertaining to ostensible agency in that, without expressly saying so, it abolishes reliance upon the alleged ostensible agency as a necessary prerequisite to the imposition of liability upon the ostensible principal.

A prima facie case was established here that there was no such reliance, and the summary judgment should be upheld.

The majority cites *Roberson v. Lampton,* Ky., 516 S.W.2d 838 (1974), and *Kaze v. Compton,* Ky., 283 S.W.2d 204 (1955), for the proposition that summary judgment should not be granted unless it can be shown that the respondent could not possibly produce evidence at trial which would entitle him to prevail. *Roberson v. Lampton, supra,* dealt with a summary judgment which was entered before discovery was completed and, in effect, only holds that the case was not ready for summary judgment.

In my view, summary judgment is never to be substituted for a trial, but under C.R. 56, if a party can make a prima facie case that no genuine issue of fact exists, the opposing party has the duty to come forward with something to rebut the prima facie case, and upon his failure to do so, summary judgment may properly be entered.

AKER and STEPHENSON, JJ., join in this dissent.