**FIRST FEDERAL SAVINGS BANK, Appellant,**

v.

**Tommy Lee McCUBBINS, Appellee.**

**No. 2005–SC–0372–DG.**

Supreme Court of Kentucky.

Nov. 22, 2006.

Rehearing Denied April 19, 2007.

Matthew C. Hess, Russell S. Sizemore, Huddleston & Van Zant, P.S.C., Elizabethtown, Counsel for Appellant.

John F. Carroll, J. Chester Porter & Associates, Shepherdsville, Counsel for Appellee.

Opinion of the Court by Justice WINTERSHEIMER.

This appeal is from a decision of the Court of Appeals which affirmed a summary judgment rendered by the circuit court in favor of McCubbins.

The questions are whether the trial judge properly applied the summary judgment standard to a) whether a genuine issue of material fact existed with regard to whether First Federal intentionally and voluntarily discharged the obligations under the first and larger note, and b) whether genuine issues in material fact exist with regard to whether McCubbins paid off the first and larger note.

McCubbins and his wife, who is now deceased, entered into a mortgage with Bullitt Federal Savings & Loan Association in 1978. The loan was for a principal sum of $16,000 plus interest at a rate of 9 percent per annum for 25 years and was secured by a mortgage on real property. The McCubbinses signed a note indicating they would pay the amount of $135.37 per month beginning June 1, 1978, and continue paying until the note was paid on May 1, 2003. In October of 1978, McCubbins and his wife obtained a second loan in the amount of $1,600 which was for the same term as the earlier loan. The new loan amount of $14.41 per month per annum was added to the previous loan amount for a total of $176.39 per month including the monthly escrow payment. The second loan was for the installation of a water and sewer system at the residence. First Federal acquired Bullitt Savings & Loan in 1999.

In the summer of 2002, McCubbins, believing that his loan was ready to be paid off, went to the bank with his daughter to inquire into its status. The 70–year–old McCubbins cannot read or write except to sign his own name. He was informed that the pay-off amount was $20.41, which he paid on July 3, 2002. He received a letter of the same date from the loan administrator of the bank regarding his "recently paid loan" and enclosing the note dated May 1, 1978 stamped "paid in full" on July 3, 2002, as well as the mortgage on his property entered into May 1, 1978, also stamped "paid in full" on July 3, 2002. The mortgage and the letter referred to loan No. 601001397. On July 25, 2002, the deed of release of the mortgage signed by the senior vice-president of the bank was recorded in the Bullitt County Clerk's office.

According to payment records produced by First Federal, McCubbins continued to make monthly mortgage payments until July 2003, nearly a year after the mortgage had been released. Approximately

20 months later, in February 2004, First Federal sued McCubbins claiming that he had defaulted on the original $16,000 loan and sought to recover $6,547 as the outstanding balance. McCubbins answered the complaint and attached the note and mortgage, both of which had been stamped paid in full by First Federal. He stated that the documents were proof that First Federal had intentionally and voluntarily released him from any further obligation.

During discovery, First Federal was requested to and did produce its loan file and its loan history on this matter. McCubbins then filed a motion for summary judgment contending that the bank discharged his obligation under the note pursuant to KRS 355.3–604(1)(a) by a voluntary and intentional act and noting that the loan history only dated back to January 4, 1999, whereas the loan dated back to 1978. The bank objected to the motions although acknowledging that the original note and mortgage stamped paid in full had been mailed, it asserted that those actions were clerical errors on the part of employees and that there was no intention to release McCubbins from his obligation on the $16,000 note. The bank argued that there was a factual issue as to whether the bank intentionally and voluntarily released the obligation on the $16,000 note. First Federal attached an affidavit from Recovery and Preservation Officer David G. Bush who indicated that only the smaller loan had been paid off and that First Federal had mistakenly mailed the original and larger note and mortgage to McCubbins. McCubbins replied in part that he had still not received a full payment history from First Federal and that the lender had not provided any affidavits from those responsible for discharging the obligation.

Following a hearing and a review of the evidence in the record, the circuit judge granted the motion of McCubbins for a summary judgment. First Federal appealed to the Court of Appeals which affirmed the decision of the circuit judge and this Court accepted discretionary review.

## I. Standard of Review

The proper standard of review on appeal when a trial judge grants a motion for summary judgment is whether the trial judge correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to a judgment as a matter of law. CR 56.03. It has long been held that a trial judge must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists and then the burden shifts to the party opposing summary judgment to produce at least some affirmative evidence showing that there is a genuine issue of material fact requiring trial. *See Hubble v. Johnson,* 841 S.W.2d 169 (Ky.1992); *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.,* 814 S.W.2d 273 (Ky.1991); *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476 (Ky.1991); *Paintsville Hospital Co. v. Rose,* 683 S.W.2d 255 (Ky.1985). We have examined the evidence in light of that standard and agree that there is no genuine issue of material fact.

As the Court of Appeals correctly noted, the decision in this case is based on the application of KRS 355.3–604(1) which provides:

A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument:

(a) By an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation of striking out of the party's signature, or the addition of words to the instrument indicating discharge.

First Federal contends that the discharge of the obligation was neither voluntary nor intentional and that consequently a disputed factual issue remains. We cannot agree.

 Initially, it should be observed that First Federal has not claimed that any type of fraud or deceit was involved on the part of McCubbins. The posture of this case requires First Federal to meet its burden of bringing at least some affirmative evidence to challenge the evidence from McCubbins that the debt had been fully paid. McCubbins provided the note and mortgage stamped "paid in full" that he received from First Federal as well as the deed of release. First Federal produced only an affidavit from a bank official whose role in the situation is not clear. The official did indicate that he had personal knowledge of the circumstance, but the affidavits failed to indicate precisely how he was involved or how long he had been involved in the account. In addition neither the loan officer who sent the letter to McCubbins along with the stamped note and mortgage, nor the vice-president who signed the deed of release, provided any testimony or other evidence in this regard. The affidavit alone is not enough to establish the burden of First Federal that a genuine issue of material fact exists with regard to the intentional and voluntary discharge of the loan obligations.

First Federal relies on *Richardson v. First Nat. Bank of Louisville,* 660 S.W.2d 678 (Ky.App.1983), to support its argument that the discharge of the obligation is not intentional but rather only a clerical error.

*Richardson, supra,* can be factually distinguished. In that case, the lending institution mistakenly informed the parties in December of 1980 that the note had been paid. The following April, approximately four months later, the lender realized the mistake and filed suit to recover the amount due. In that case, the reviewing court examined the statute in place at that time which was KRS 355.3–605(a)(1) and determined that substantial evidence in the record established that the bank did not have the required intent to cancel the obligation.

*Richardson, supra,* is not dispositive of this situation. One of the significant differences is the time. In *Richardson,* the bank recognized its error and filed suit within four months. Here, First Federal waited over twenty months before taking legal action. In addition, in this case, McCubbins presented the documentary evidence and affidavits to counter the affidavits provided by First Federal and established that the note at issue had been paid. Moreover, there is a significant factual gap in regard to the establishment that a debt was ever owed. First Federal never provided a full payment or loan history prior to 1999. This note dated back to 1978 and over twenty years of payment history are missing. Here, McCubbins claimed payment and provided the note and mortgage stamped "paid in full" as well as a deed of release, all of which he received from First Federal. First Federal did not meet its burden to establish that any debt remained when it did not produce records reflecting the full payment of the loan history. Accordingly, there are no disputed facts on this question.

It is the decision of this Court that the summary judgment was proper. There was no genuine issue as to any material fact and McCubbins is entitled to a summary judgment as a matter of law. The

decision of the Court of Appeals is affirmed.

LAMBERT, C.J., GRAVES and SCOTT, concur.

McANULTY, J. dissents by separate opinion and is joined by ROACH, J.

ROACH, J. dissents by separate opinion and is joined by McANULTY, J.

MINTON, J., not sitting.

McANULTY, Dissenting Justice.

Respectfully, I dissent from the majority's conclusion. Summary judgment should not have been granted in this case because there are genuine issues of material fact concerning First Federal Savings Bank's intent to release McCubbins from his obligation on the $16,000 note. The evidence brought forward by First Federal indeed tended to show that the discharge of the obligation on the note was unintentional. That issue was appropriate for determination by a jury.

The affidavit from the bank official alleged personal knowledge by this official as to the loan history. I do not believe affidavits were required from the loan officer who wrote the letter or the vice president who signed the deed of release, since the affidavit the bank provided purports to explain their actions. In addition, the majority ignores the fact of the similarity in loan numbers of the two loans, and the fact that the letter sent to McCubbins only referenced the loan number on the smaller loan. Thereafter, McCubbins continued making payments on the larger loan for approximately a year after receiving the letter and the note. Moreover, the bank asserts that its mailing of the original note and mortgage was a mistake, and its records showed a balance remained on the larger loan. There was evidence to support First Federal's contention that the two loans had been confused and that it

lacked the requisite intent to cancel the instrument. This was a disputed fact question.

In *Steelvest Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 483 (Ky.1991), we declared our adherence to the principle that "summary judgment is to be cautiously applied and should not be used as a substitute for trial." We further instructed that summary judgment:

should only be used "to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." It is vital that we not sever litigants from their right of trial, if they do in fact have valid issues to try, just for the sake of efficiency and expediency.

*Id.* at 483. Under the Kentucky standard for summary judgment, the movant does not succeed unless his right to judgment is shown with such clarity that there is no room left for controversy. *Id.* at 482. Viewing the evidence in the light most favorable to First Federal, there remains the controversy of whether the note was cancelled as a matter of mistake, and thus summary judgment was not proper.

Further, I believe *Richardson v. First Nat'l Bank of Louisville,* 660 S.W.2d 678 (Ky.App.1983), is properly applicable in this instance where a lending institution alleges error in the discharge or cancellation of a debt. The majority distinguishes *Richardson* based on the time when the bank acted to correct the situation. I do not believe the time difference is dispositive, given that McCubbins continued to pay for a year, and that 20 months may have represented the earliest opportunity for the bank to act on the error. Since the time factor is not material in terms of establishing intent or voluntariness in

these types of cases, I do not believe the time difference is a sufficient basis for distinguishing *Richardson*. Under *Richardson*, KRS 355.3–604 provides for discharge only if the act of the bank was an intentional and voluntary act. Thus, this makes the voluntariness of the act a question of fact for a jury.

ROACH, J., joins this dissenting opinion.

ROACH, Justice, dissenting.

I agree completely with Justice McAnulty's dissent, which describes how summary judgment was inappropriate in this case under the standard outlined in *Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255 (Ky. 1985), and reaffirmed in *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). I write separately, however, to highlight the conclusion compelled by the Court's decision given the evidence in the record, namely that we have departed *sub silentio* from *Paintsville Hospital* and *Steelvest*.

Because the Court insists that it is simply applying the old summary judgment standard, the best way to illustrate the departure from the rule for the bench and bar is to look at the evidence itself. In response to the summary judgment motion, the bank produced the affidavit of one of its officers and records of the last four years of McCubbins's payments on the loan.

The affidavit of the bank officer, David Bush, reads in its entirety as follows:

Comes the undersigned Affiant, David G. Bush, having been first duly sworn, states as follows:

1. The undersigned is the Recovery and Preservation Officer at First Federal Savings Bank, and he is authorized to give this Affidavit.

2. The undersigned has personal knowledge of the facts contained herein and is familiar with the account of Tommy Lee McCubbins, being First Federal Account Nos. 600–001–397 and 601–001–397.

3. That as of February 10, 2004, the unpaid balance on the Note, being First Federal Account No. 600–01–397, was $6,6547.00 [1] with interest thereon at the rate of 9% per annum, until paid.

4. First Federal Savings Bank is the owner and holder of Loan No. 600–01–397 made to Tommy Lee McCubbins, said loan maturing on May 1, 2003.

5. On July 3, 2002, Tommy Lee McCubbins paid off Loan No. 601–001–397.

6. Because the aforesaid loans had similar loan numbers, First Federal Savings Bank mistakenly mailed the original of the Note, assigned First Federal Loan No. 600–01–397, and the original Mortgage securing said Note, to Tommy Lee McCubbins, stamped "Paid in Full" in July 2002.

7. For the same reason, in August of 2003, First Federal Savings Bank mistakenly released the Mortgage securing the aforesaid Note.

8. First Federal Savings Bank did not intend to voluntarily release Tommy Lee McCubbins from his obligations under the aforesaid Note and Mortgage, being First Federal Loan No. 600–01–397, as the referenced loan, on July 3, 2002, had an unpaid balance on the aforesaid Note of $5756.87 with interest thereon at the rate of 9% per annum, until paid.

This 21st day of July, 2004.

---

1. This figure includes a typographical error; it should have read "$6,547.00." However, I have opted to include the entire text of the affidavit, rather than correcting the error.

/s/ _____

DAVID G. BUSH

As Justice McAnulty's dissenting opinion points out, this affidavit clearly establishes a genuine issue of material fact regarding whether the discharge of the loan was intentional and voluntary as required by KRS 355.3–604(1). To conclude otherwise is to blatantly disregard *Steelvest*'s command that "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." 807 S.W.2d at 480.

The payment records that the bank produced showed the date and amount of the fifty payments made between April 1999 and July 2003, when McCubbins quit paying on the loan. The records also show a running balance after each payment and indicate that a balance of $5756.87 remained after the last payment was made in July 2003. The majority discounts this evidence by claiming that because the bank failed to produce records of all of the payments going back to when the loan was issued in 1978, it had failed to "meet its burden that any debt remained. . . ." Ante at 204. But the bank's burden in order to overcome the motion for summary judgment was not to produce perfect and complete proof of every fact related to its claim. Rather, under *Steelvest* and *Paintsville Hospital*, the bank needed only produce enough evidence to show the existence of a material issue of fact. Surely an uncontradicted record showing that McCubbins owed the bank over $5700 at the time he chose to quit making payments is sufficient to show the existence of a material issue of fact as to whether part of the debt was still outstanding and unpaid.

We have stated that summary judgment "is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Paintsville Hosp. Co.*, 683 S.W.2d at 256. And we have gone to great lengths to distinguish our summary judgment standard from the more relaxed one used in the federal courts. *Steelvest*, 807 S.W.2d at 480–83. Applying the Kentucky standard, summary judgment is clearly inappropriate in this case, given the bank's evidence. Thus, the Court's approval of the summary judgment shows a clear departure from our long-standing rule. The only question remaining is whether *Steelvest* and *Paintsville Hospital* have been completely discarded in favor of a more lenient summary judgment standard or the new standard applies only to the detriment of banks and other commercial businesses.

McANULTY, J., joins this dissenting opinion.