RENDERED: SEPTEMBER 2, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1344-MR

DONALD MOBELINI, SHEENA
BREEDING, AND LUKE GLASER,
IN THEIR INDIVIDUAL CAPACITIES AS
EMPLOYEES OF THE HAZARD INDEPENDENT
SCHOOLS BOARD OF EDUCATION                            APPELLANTS


                        APPEAL FROM PERRY CIRCUIT COURT
v.                      HONORABLE ALLISON B. WELLS, JUDGE
                        ACTION NO. 19-CI-00469


HAILEY LAWSON                                                APPELLEE


                                OPINION
                        AFFIRMING AND REMANDING

                            ** ** ** ** **

BEFORE: JONES, MAZE, AND McNEILL, JUDGES.

MAZE, JUDGE: Donald Mobelini, Sheena Breeding, and Luke Glaser

(collectively, "the Appellants") appeal from an order of the Perry Circuit Court

denying their motion for summary judgment based upon qualified official

immunity. The Appellants argue that their actions in supervising a high-school class trip were discretionary in nature, and therefore, they were entitled to qualified immunity from the claims asserted against them in their individual capacities. We conclude that the Appellants' duties were, for the most part, ministerial in nature. Furthermore, there are factual questions whether any of their specific actions involved discretionary duties. As a result, the trial court properly denied their motion for summary judgment based on qualified immunity. Hence, we affirm the trial court's order and remand this matter for further proceedings on the merits of Lawson's claims.

Because this matter was decided on a motion for summary judgment, we will review the facts in the light most favorable to the non-moving party. In October 2017, Hailey Lawson was a 16-year-old high-school junior attending Hazard High School.[1] Earlier in the semester, Lawson signed up to go on a class trip to New York City and Washington, D.C. Students had to have their parents' permission for the trip, and Lawson's mother signed the permission slip. Prior to leaving on the trip, the students chose their roommates for the room assignments

---

[1] We recognize that Lawson was a minor at the time these events took place. Furthermore, her claims involve allegations of sexual assault. However, Lawson filed this action after she reached the age of majority. Furthermore, she did not ask the trial court or this Court to remove any identifying information from the pleadings. Therefore, we will continue to refer to her by name.

and room assignments were based on those requests. Lawson chose two male students as her roommates, with her parents' approval.

The class trip departed on October 27th following a football game. Including Lawson, there were fifty-one students on the trip. In addition, three chaperones accompanied the students: Principal Mobelini and two teachers, Breeding and Glaser. The students were required to drop off their luggage, backpacks, and purses before the trip, and the chaperones searched the bags prior to leaving Hazard.

After traveling through the night, the school group arrived at Times Square in New York City the following day. The students were allowed to tour the area on their own and were instructed to meet back with the group at a certain time. Following dinner, the group went to a Broadway play. After the play, they returned to Times Square to board the bus to the hotel in New Jersey.

The following day, the group returned to New York City for more touring. They were scheduled to take a cruise on the Hudson River but missed the boat. The students were again allowed free time in Times Square. After a visit to the Empire State Building, the students boarded the bus for the trip back to the hotel in New Jersey. The students' bags were not searched after any of their free time in New York City.

At the hotel, each chaperone stayed up one night to monitor the students, but there is some confusion over who was responsible for hall duty. Mobelini stated that he took hall duty on the first night, but Glaser stated that he had hall duty that night while Mobelini periodically checked in. Breeding stated she took hall duty the second night. Mobelini testified that he heard a whistle blowing sometime during that night and went to investigate. Mobelini and Breeding both testified that they did not hear any other disruptions on the second night.

The group returned to the hotel on the second night sometime after 1:00 a.m. In her deposition, Lawson stated that she received a text message from a male student asking her to join a party in another room. Lawson stated that there were 12 to 15 students in the room when she arrived and that they had a window open and a towel under the door. Some of the students were drinking alcohol and smoking marijuana. Lawson stated that she became intoxicated after drinking some alcohol offered by another student. A male student, identified as "C.F.," walked Lawson back to her room.

Lawson testified that once she and C.F. were inside the hotel room, he tossed her on the bed and held her down. Lawson testified that she told him "no," but C.F. continued to hold her down, take off her clothes, and then rape her. Lawson testified that she "passed out" shortly after C.F. left the room.

-4-

The following morning, Lawson called her mother, and then reported the incident to Mobelini. When the group arrived in Washington, D.C., Mobelini, Breeding, and Glaser called Lawson and C.F. and asked each what happened. Lawson again reported that C.F. had raped her, but C.F. said they had consensual sex. Another student informed Mobelini that someone had obtained the alcohol and marijuana in Times Square and carried it back to the hotel in a backpack. Mobelini contacted the Hazard Police, who instructed him to get the underwear that Lawson was wearing when she was raped. Following the visit to Washington, D.C., the group returned to Hazard.

On October 23, 2019, Lawson brought this action, asserting claims for negligent supervision and performance of duties. Her complaint named as defendants the Hazard Independent Schools and the Hazard Independent Schools Board of Education. She also named Mobelini, Breeding, and Glaser in their official and individual capacities. Following a period of discovery, the defendants moved for summary judgment based upon governmental immunity and qualified immunity for Mobelini, Breeding, and Glaser in their individual capacities. On October 29, 2021, the trial court granted the motion for summary judgment on the claims against the Hazard Independent Schools, the School Board, and Mobelini, Breeding, and Glaser in their official capacities. However, the court denied the individual defendants' motion for summary judgment based on qualified

immunity. This appeal followed. Additional facts will be set forth below as necessary.

As an initial matter, we note that the denial of a motion for summary judgment is generally considered an interlocutory order and is not appealable. However, an order denying a substantial claim of absolute or qualified immunity is immediately appealable even in the absence of a final order. *Breathitt County Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009). As a result, this Court has jurisdiction to address the Appellants' claim that the trial court improperly denied their motion for summary judgment.

Turning to the merits of this appeal, we commence our discussion of these issues by reiterating the familiar and well-established standard by which appellate courts review a grant of summary judgment:

> The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. CR[2] 56.03. There is no requirement that the appellate court defer to the trial court since factual findings are not at issue. *Goldsmith v. Allied Building Components, Inc.*, Ky., 833 S.W.2d 378, 381 (1992). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991). Summary "judgment is only proper where the movant

---

[2] Kentucky Rules of Civil Procedure.

> shows that the adverse party could not prevail under any circumstances." *Steelvest*, 807 S.W.2d at 480, *citing Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985). Consequently, summary judgment must be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor . . . ." *Huddleston v. Hughes*, Ky. App., 843 S.W.2d 901, 903 (1992), *citing Steelvest*, supra (citations omitted).

*Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

As noted above, the sole question on appeal is whether the trial court properly denied the Appellants' motion for summary judgment based upon qualified immunity. An officer or employee of a governmental agency is afforded qualified official immunity, rather than absolute official immunity, when sued in his individual capacity. *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001). Qualified official immunity applies to a negligent act or omission by a public officer or employee for his or her "(1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . . ; (2) in good faith; and (3) within the scope of the employee's authority." *Id.* at 522 (citing RESTATEMENT (SECOND) OF TORTS § 895D). Qualified immunity does not extend to the negligent performance of ministerial acts, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts. That a

necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature. *Id.*

In *Marson v. Thomason*, 438 S.W.3d 292, 296 (Ky. 2014), the Kentucky Supreme Court pointed out that the distinction between ministerial and discretionary duties is often elusive.

> The question of when a task is ministerial versus discretionary has long plagued litigants and the courts. Generally, a governmental employee can be held personally liable for negligently failing to perform or negligently performing a ministerial act. Part of the rationale for allowing this individual liability is that a governmental agent can rightfully be expected to adequately perform the governmental function required by the type of job he does. To the extent his job requires certain and specific acts, the governmental function is thwarted when he fails to do or negligently performs the required acts. But when performance of the job allows for the governmental employee to make a judgment call, or set a policy, the fact that there is uncertainty as to what acts will best fulfill the governmental purpose has resulted in immunity being extended to those acts where the governmental employee must exercise discretion. To some extent, this says that governing cannot be a tort, but failing to properly carry out the government's commands when the acts are known and certain can be.
>
> At its most basic, a ministerial act is "one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." [*Yanero*, 65 S.W.3d] at 522. "That a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature." *Id.* (*quoting Upchurch v. Clinton County*, 330 S.W.2d 428, 430 (Ky. 1959)). And

-8-

an act is not necessarily outside the ministerial realm "just because the officer performing it has some discretion with respect to the means or method to be employed." *Id.*; *see also* 63C Am.Jur.2d *Public Officers and Employees* § 319 (updated through Feb. 2014) ("Even a ministerial act requires some discretion in its performance."). In reality, a ministerial act or function is one that the government employee must do "without regard to his or her own judgment or opinion concerning the propriety of the act to be performed." 63C Am.Jur.2d *Public Officers and Employees* § 318 (updated through Feb. 2014). In other words, if the employee has no choice but to do the act, it is ministerial.

On the other hand, a discretionary act is usually described as one calling for a "good faith judgment call[ ] made in a legally uncertain environment." *Yanero*, 65 S.W.3d at 522. It is an act "involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Id.* Given the volume of litigation on the subject, it is clear that these definitions are not a model of clarity. No doubt, this is due to their having been written in general, somewhat sweeping terms.

*Id.* at 296-97.

*Marson*, like this appeal, involved claims of qualified immunity by school officials. A student was injured after he fell from bleachers in a school gymnasium. The student fell because the bleachers had not been fully extended. The student's parents brought a negligence action against the high-school principal, the middle-school principal, and the teacher who had been supervising the students at the time of the injury. The Court noted that the two principals had general supervisory responsibilities over the gymnasium but were not directly

responsible for ensuring that the bleachers were extended. *Id.* at 300. The middle-school principal was responsible for assigning that task to the custodial staff, but not actually performing the task herself. *Id.* Similarly, the high-school principal had only a general supervisory duty over the high school's use of the gym and did not participate in the morning routine of the middle-school students. *Id.* Consequently, the Court concluded that the two principals' duties were discretionary in nature.

On the other hand, the teacher had specific responsibilities for supervising the students, which included following a set process. *Id.* at 300-01. Although the teacher could exercise some decision-making in this process, the Court concluded that the duties were fundamentally ministerial in nature. Consequently, the Court concluded that the teacher was not entitled to qualified immunity for the performance of these duties. *Id.* at 301.

Here, the Appellants argue that their supervisory responsibilities over the students on a class trip were essentially discretionary in nature. However, *Marson* clearly sets out that discretionary duties usually involve policy-making or general supervisory duties. *Id.* at 297. Thus, the formulation of student-conduct policies is a discretionary function, while the enforcement of those policies is a ministerial function. *Patton v. Bickford*, 529 S.W.3d 717, 726-27 (Ky. 2016).

KRS[3] 161.180 requires public school administrators to adopt rules and regulations for the conduct of students on school premises, on the way to and from school, and on school-sponsored trips and activities. *See also* KRS 160.290 (establishing duties of local boards of education to promulgate rules for student conduct). While the promulgation of such rules is a discretionary function, the enforcement of those rules and the supervision of students on school-related functions is generally considered a ministerial function. *Williams v. Kentucky Dep't of Educ.*, 113 S.W.3d 145, 150 (Ky. 2003).

The Appellants, most notably Mobelini, point out that the investigation of claims involving alleged student misconduct requires considerable discretion in how the investigation is conducted and judgment in determining whether the misconduct occurred. *See Turner v. Nelson*, 342 S.W.3d 866, 875-76 (Ky. 2011). Furthermore, the enforcement of general supervisory duties is often considered a discretionary function. *Ritchie v. Turner*, 559 S.W.3d 822, 832 (Ky. 2018). Consequently, the Appellants assert that their responsibilities for supervising the class trip in this case were discretionary in nature.

However, the facts in *Turner v. Nelson* were "atypical," in that the teacher's statutory duty to report suspected sexual abuse only arose if she knew or

---

[3] Kentucky Revised Statutes.

had reasonable cause to believe that the child was abused. *Patton v. Bickford*, 529 S.W.3d at 728. Determining whether to report an incident as sexual abuse required investigating the facts, weighing the credibility of the children, and exercising judgment to discover if the alleged actions of the five-year-old could even qualify as "sexual abuse." "The degree of discretion required is evident and clearly outweighs the ministerial duty of making a binary decision to report the incident or not." *Id.* Similarly, the school officials in *Ritchie* were not actively or directly involved in the supervision of students or faculty but were only responsible for investigating misconduct when brought to their attention. 559 S.W.3d at 832.

By contrast, the Appellants in the current case directly supervised the students participating on the class trip. As a result, their performance of the chaperoning duties was clearly ministerial. There is a separate question of whether Mobelini's actions in investigating Lawson's report involved his performance of a discretionary duty. But, Mobelini does not make that argument on appeal, and we conclude that this question is not yet ripe for adjudication.

For purposes of this appeal, we conclude that the trial court did not err in denying the Appellants' motion for summary judgment based upon qualified immunity. Of course, Lawson still bears the burden of proving actionable negligence arising from the Appellants' performance of their ministerial duties. There is also a factual question of whether Mobelini was acting in a discretionary

-12-

role while investigating Lawson's report of the sexual assault by C.F. At this point in the proceedings, it is not clear that these after-the-fact actions were distinct from his supervisory and chaperoning duties. Likewise, it is does not appear that Lawson is asserting claims against Mobelini arising from these actions. Therefore, we must leave these matters for the trial court to resolve upon remand.

Accordingly, we affirm the order of the Perry Circuit Court denying the Appellants' motions for summary judgment and we remand this matter for additional proceedings on the merits of Lawson's claims.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Sam R. Collins
Hazard, Kentucky

Barbara A. Kriz
Lexington, Kentucky

BRIEF FOR APPELLEE:

Cheryl U. Lewis
Hyden, Kentucky