RENDERED:  OCTOBER 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1141-MR

SANDRA SNYDER                                                    APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.           HONORABLE ANN BAILEY SMITH, JUDGE
ACTION NO. 19-CI-006919

LOUISVILLE GAS AND ELECTRIC
COMPANY;[1] BRIAN FUNK; JEFF
BROWN; MATT HAINES; AND TIM
MAIER                                                            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

GOODWINE, JUDGE:  Sandra Snyder ("Snyder"), a pedestrian, filed suit against

Louisville/Jefferson County Metro Government Department of Public Works

---

[1] Snyder did not make any allegations against Louisville Gas and Electric ("LG&E") in this appeal and LG&E did not file a brief.  Below, Appellees Funk, Brown, Haines, and Maier filed a Third-Party Complaint against LG&E.  Snyder filed a motion to amend her complaint to add claims against LG&E.  The circuit court denied her motion by order on July 15, 2021.  Snyder did not appeal that order.

("Public Works");[2] Vanessa D. Burns ("Burns"), Director of Public Works, in her individual capacity; and the four following Public Works supervisors, in their individual capacities: Jeff Brown; Matt Haines; Brian Funk; and Tim Maier (collectively "Public Works supervisors"). Snyder tripped and fell in a divot in an intersection, and she alleged Public Works and its supervisory employees were negligent in maintaining an intersection and warning of latent dangers. The Jefferson Circuit Court granted summary judgment in favor of Public Works and its employees. After careful review of the record, finding no error, we affirm.

## BACKGROUND

On November 23, 2018, Snyder and her husband took their granddaughter to the Light Up Louisville event in Jefferson Square Park. The Snyders left the event early, and as they crossed the road at the intersection of West Liberty Street and South Sixth Street, Snyder alleged she fell in a "divot" in the crosswalk. R. at 5, 553-554, 556. Snyder alleged the fall caused injuries to her right finger, right hand, right wrist, and both knees. Snyder's husband drove her to Norton Brownsboro Hospital for treatment.

Before Snyder's fall, on March 2, 2018, and July 2, 2018, private citizens reported to Public Works the existence of damaged pavement at the

---

[2] Snyder's complaint incorrectly referred to Public Works as Louisville Metro Public Works and Assets. Record ("R.") at 5. The answer properly identified the defendant as Louisville-Jefferson Metro Department of Public Works. R. at 53.

intersection of West Liberty Street and South Sixth Street in Louisville. In March, a citizen called to report that a pothole was present in the intersection. In July, a citizen wrote, "pretty much the entire intersection [was] a mess." R. at 1001.

Public Works' policy requires that "all potholes are to be repaired within two (2) working days of being reported." R. at 1028. Following both reports, records indicate a Public Works employee inspected the intersection for damage. The March report indicates the repair was "complete upon inspection." R. at 1003. The July report stated, "Nothing found." R. at 1001.

About three weeks after the incident, on December 14, 2018, Snyder called Metro Government to report her fall and the divot in the crosswalk. An employee of Public Works investigated Snyder's report and updated the service request noting, "utility cuts that have sunk down" caused the hole and that "hot mix" was needed to repair it. R. at 621. The hole was patched on December 26, 2018.

On November 5, 2019, Snyder filed a complaint against Public Works; Burns, in her individual capacity; and the four Public Works supervisors in their individual capacities. Snyder's complaint alleged the defendants were negligent in failing to maintain the roadway and crosswalk at the intersection and warn of latent dangers.

On November 25, 2019, Public Works and Burns filed a motion to dismiss Snyder's complaint against them. Public Works argued it is a Louisville/Jefferson County Metro Government agency and was not a properly suable party. Burns argued that, as a supervisor, she was entitled to qualified immunity. Snyder opposed the motion. On October 1, 2020, the circuit court granted the motion and dismissed the complaint against Public Works and Burns. The circuit court found Public Works was "absolutely immune from suit," and Burns was "qualifiedly immune from the instant lawsuit." R. at 240, 242.

On September 21, 2020, the Public Works supervisors, all in their individual capacity, moved for leave to file a third-party complaint against Louisville Gas and Electric Company ("LG&E"). The Public Works supervisors alleged, at the time of Snyder's fall, Metro Government had "granted certain right of way encroachment permits to [LG&E] to install an electrical conduit or to perform other work. As part of these permits, [LG&E] agreed to hold Metro Government and its employees harmless from all damages to [any] person that may result from their work performed during this period." R. at 237. The defendants alleged that to the extent their negligence caused Snyder's alleged injuries and damages, they were entitled to apportionment and/or indemnity or for contribution against LG&E. Snyder opposed the motion. On December 2, 2020, the circuit court granted the motion.

-4-

The motion to file the third-party complaint was made before the circuit court dismissed Burns as a defendant. Subsequently, Burns moved to be dismissed as a third-party plaintiff. The circuit court entered an agreed order to this effect on February 12, 2021.

On February 24, 2021, Snyder filed a motion to amend the complaint to add claims against third-party defendant, LG&E. LG&E and the Public Works supervisors opposed the motion. The Public Works supervisors argued the verbiage in the proposed amended complaint can be interpreted as naming them in their official capacities in addition to their individual capacities, and any claims against them in their official capacities was time barred.

On July 15, 2021, the circuit court entered an order denying Snyder's motion to amend the complaint. The court found the "amended complaint that seeks to add LG&E did not change a party against whom a claim was being brought and there is no claimed mistake concerning the identity of either defendant. It is indisputable, then, that CR[3] 15.03(2) does not render the plaintiff's amendment timely[.]" R. at 489.

On December 29, 2021, the Public Works supervisors moved for summary judgment. They argued each of them was an upper-level supervisor who performed purely discretionary acts and was entitled to qualified immunity. R. at

---

[3] Kentucky Rules of Civil Procedure.

968-69.  Brown was the "Executive Administrator and Assistant Director of Engineering" and reported directly to Director Burns.  R. at 512.  His strictly supervisory role included delegating "work or requests made through Metro Council or citizens to subordinate personnel" and supervising "Public Works' traffic engineering, permitting, inspections, infrastructure maintenance," *etc*.  R. at 512-13.

Haines was the "Engineering Supervisor" and reported directly to Brown.  R. at 514.  He "supervise[d] engineering projects, survey, or field operations and activities conducted by Public Works."  *Id.*  Though his role was supervisory, he "occasionally conduct[ed] 'on-site inspections' but only to 'review and inspect the progress and completion of projects to determine needed equipment and materials, to discuss work assignments and problems, and to investigate and resolve complaints."  *Id.*  He reported directly to Brown.

Funk reported directly to Director Burns as "the Assistant Director of Road Operations."  R. at 513.  As "a high-ranking supervisor," he "exercised discretion as to the best means to ensure Public Works is run efficiently and effectively."  *Id.*  The Division of Road Operations was responsible for inspecting and repairing potholes when citizens reported them.  R. at 675.

Before retiring, "Maier served Public Works as District Operations Administrator" and directly reported to Funk.  *Id.*  Maier served "as an

administrative intermediary between mid-level managerial and supervisory staff and the Assistant Director or manager of each division of Public Works." *Id.*

Additionally, the Public Works supervisors argued that even if they are not entitled to immunity, they had no notice of the defect in the roadway before Snyder's incident and cannot be liable for her injuries.

In response, Snyder argued repair of potholes was a ministerial duty, and the Public Works supervisors were negligent in administering their duties to supervise their employees to ensure they carried out this duty to maintain and repair roads and sidewalks. R. at 995-96.

The circuit court heard the motion on April 29, 2022. On August 31, 2022, the circuit court entered an order granting summary judgment in favor of Public Works supervisors, Brown, Haines, Funk, and Maier. The circuit court applied *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001), to determine whether the defendants were entitled to qualified official immunity in their individual capacities. The circuit court found Funk "was in charge of the Road Operations Division of the Department of Public Works and that division was, and still is, responsible for making pothole repairs." R. at 1114. His job required him to ensure the division's employees met work requirements, "which includes seeing to it that they attend to repairing potholes after they are reported." *Id.* As such, the circuit court found "Funk has the ministerial duty within Public Works to see that

the pothole policy is carried out." *Id.* Likewise, Maier, the District Operations Administrator of the Roads and Operations Division, at the time of Snyder's fall but now retired, "can also be said to have had the duty to make sure the pothole policy was carried out since, according to his affidavit, he was the intermediary between mid-level supervisors and the Assistant Director, Funk." *Id.*

Though the circuit court did not elaborate, it found the "other defendants [Brown and Haines] did not have this duty, and they are dismissed." *Id.*[4]

After determining Funk and Maier performed a ministerial duty in supervising employees carrying out the pothole policy, the circuit court determined whether they "breached their duty to comply with the pothole policy in [Snyder's] case." R. at 1115. The circuit court found that after citizens filed reports of damage in the intersection in March and/or July, Public Works issued follow-up reports. The March follow-up report states a crew repaired the pothole after a citizen reported it. The July follow-up report states that "no problem [was] found" at the site when an employee inspected it. *Id.* Additionally, Funk testified that, based on his experience, "LG&E probably repaired the damage to the intersection" before the Public Works employee inspected it. *Id.* The circuit court found

---

[4] Snyder is not challenging the dismissal of Brown, Haines, Burns, and/or Public Works. Appellant's Brief at 4.

Snyder's argument that Public Works either did not repair the damage to the intersection or repaired it negligently following the July report unpersuasive. The court found her argument ignored the March and July reports, and these reports "constitute evidence that Funk and Maier complied with their ministerial duty to administer the pothole policy." *Id.* Thus, the circuit court found the defendants established there was no genuine issue of material fact and granted summary judgment in their favor. This appeal followed.

On appeal, Snyder argues the circuit court erred in: (1) determining that no genuine issues of material fact remained and (2) improperly applying a burden shifting analysis.

**STANDARD OF REVIEW**

"The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Phoenix American Administrators, LLC v. Lee*, 670 S.W.3d 832, 838 (Ky. 2023). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*" *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky. App. 2001) (citations omitted).

# ANALYSIS

Snyder argues the circuit court erred in determining there were no genuine issues of material fact and improperly applied a burden shifting analysis in reaching its conclusion. Specifically, she argues the July report of damage to the intersection and subsequent remedial report creates an issue of fact. Snyder argues a jury could find the July report incorrectly stated no damage was found, that the damage existed, was not repaired, and was still present when she fell in November. Additionally, Snyder argues the circuit court erred in flipping the burden of proof by analyzing her position and then using the Public Works supervisors' position to refute hers. She asserts reversing the burden ignores her interpretation of the evidence.

Although Snyder discusses the circuit court's *Yanero* analysis in her statement of the case, her argument does not contest the circuit court's findings that Brown and Haines performed discretionary acts and were entitled to qualified official immunity and Funk's and Maier's acts were ministerial. Though unclear, her argument seems to be that Funk and Maier breached the duty of care owed to her in either failing to repair or negligently repairing the intersection after the July report. However, Snyder's brief does not contain the word "breach."

-10-

In *Kearney v. University of Kentucky*, 638 S.W.3d 385 (Ky. 2022), our Supreme Court detailed the applicable analysis for determining whether a material fact exists in the record:

> Determination that a fact is material or immaterial rests on the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). But as CR 56.03 reflects, the inquiry is not simply whether an issue of material fact exists but what facts the parties are able to prove. *See Steelvest* [*v. Scansteel Service Center, Inc.*], 807 S.W.2d [476, 483 (Ky. 1991)]; *Barton v. Gas Serv. Co.*, 423 S.W.2d 902, 905 (Ky. 1968). An issue of material fact is "genuine" at the summary judgment phase when discovery has revealed facts which make it possible for the non-moving party to prevail at trial. *See Welch [Iv. American Publishing Co. of Kentucky*], 3 S.W.3d [724, 730 (Ky. 1999)]. Because summary judgment is not a substitute for trial, *Steelvest*, 807 S.W.2d at 483, it should not be granted unless "it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256 (Ky. 1985) (quoting *Roberson v. Lampton*, 516 S.W.2d 838, 840 (Ky. App. 1974)); *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992) (explaining that when determining the "impossibil[ity] for the respondent to produce evidence" as recited in the summary judgment standard, "impossible" is used in a practical sense, not in an absolute sense). As framed by CR 56.03 then, the movant is entitled to summary judgment when the movant points to evidence of record revealing facts which show it is not possible for the adverse party to prevail. *Welch*, 3 S.W.3d at 730; *see Paintsville*, 683 S.W.2d at 256 (citing *Kaze v. Compton*, 283 S.W.2d 204 (Ky. 1955)).

The party moving for judgment bears the burden of establishing the apparent non-existence of a genuine issue of material fact. *Barton*, 423 S.W.2d at 905. The burden then shifts, and the party opposing summary judgment is obligated to present at least some affirmative evidence to show that a material issue of fact exists for a jury to consider. *Steelvest*, 807 S.W.2d at 482. If, after having an ample opportunity to conduct discovery, a party opposing a properly supported motion for summary judgment fails to controvert the evidence supporting the motion, summary judgment is then proper as there has been no showing of a genuine or real issue of material fact for trial. *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010). With evidence of record being at the heart of a summary judgment decision, summary judgment is proper when the non-movant relies on little more than "speculation and supposition" to support his claims. *See Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 201 (Ky. 2010) (citing *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006)).

*Id.* at 397.

Although Snyder does not contest the circuit court's findings regarding qualified official immunity in her brief, it is relevant to our analysis. "'Official immunity' is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed." *Yanero*, 65 S.W.3d at 521. When public employees are "sued in their individual capacities," they "enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Id.* at 522. For qualified official immunity to apply "to

-12-

the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.,* those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, [63C AM. JUR. 2d *Public Officers and Employees*] § 322 [(1997)]; (2) in good faith; and (3) within the scope of the employee's authority." *Id.*

No immunity is afforded to a public employee "for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* "[A] ministerial act is a direct and mandatory act, and if it is properly performed there simply is no tort." *Marson v. Thomason*, 438 S.W.3d 292, 297 (Ky. 2014). However, if a ministerial act is "performed negligently, then that governmental employee has *no* immunity, and can be sued individually for his failure to act, or negligence in acting that causes harm." *Id.*

The circuit court's analysis hinges on whether the Public Works supervisors "had the duty to see that the repairs were made," and if so, whether they "breached their duty to comply with the pothole policy" in this case. R. at 1113, 1115. Thus, the relevant analysis is whether the Public Works supervisors were entitled to qualified official immunity. Then, if the Public Works supervisors

performed ministerial acts and were not entitled to immunity, we then address whether they were negligent in administering the pothole policy.

As to Brown and Haines, the circuit court found they performed discretionary acts in their supervisory roles in administering the pothole policy and were entitled to qualified official immunity. Snyder does not contest this finding, so we need not determine whether they were negligent in administering the pothole policy.

Regarding Funk and Maier, Snyder does not contest the circuit court's finding that they performed ministerial acts in administering the pothole policy, so we turn our analysis to whether they properly or negligently performed their duties. Snyder's theory of premises liability in her response to the motion for summary judgment and on appeal are unclear, but her argument seems to rest on whether the Public Works supervisors breached their duty of care in negligently administering the pothole policy. To determine whether Funk and Maier were negligent, we must apply the general theory of negligence to determine whether they breached the duty of care owed to Snyder:

> [U]nder comparative fault, every person has a duty of ordinary care in light of the situation, and that duty applies equally to plaintiffs and defendants. For fault to be placed on either party, a party must have *breached* his duty; and if there is a breach, fault must be apportioned based on the extent a party's breach caused or helped cause harm to the plaintiff.

-14-

*Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 298 (Ky. 2015). Additionally, it is also true that "under comparative fault as it has always been that if a landowner has done everything that is reasonable under the circumstances, he has committed no breach, and cannot be held liable to the plaintiff." *Id.*

Funk and Maier presented evidence that they properly administered the pothole policy, establishing their reasonable belief that the intersection was in good condition after the July report. The March and July reports showed that both times, Public Works complied with the pothole policy by sending an employee to inspect for damage. The March report shows a repair was made, and the July report shows a Public Works employee found no damage existed. No citizen reports were filed between the July report and Snyder's fall in November, so Maier and Funk were unaware of any damage to the intersection between the July report and Snyder's report made three weeks after her fall. They alleged the type of damage found after Snyder's fall can happen quickly, even overnight. Funk and Maier argued they had no notice that an unsafe condition existed at the time of Snyder's fall, which would be required for them to direct their employees to repair the intersection under the pothole policy. Thus, because the Public Works supervisors established that they complied with the pothole policy, they met their initial burden of establishing the non-existence of a genuine issue of material fact.

Our analysis now turns to whether Snyder presented some affirmative evidence of a material issue of fact for the jury to consider, and we conclude she did not. Snyder's argument in response to the summary judgment motion was "the damaged area that injured her is the same one that citizens reported in March and/or July of that year, over four months before she fell, and that Public Works either did not repair it or repaired it negligently." R. at 1115. Snyder's argument relies on her speculative interpretation of the facts, and she attempted to establish a breach of the duty of care based on the mere existence of damage in the intersection. Her contention that the intersection must not have been repaired between the July report and November is not supported by any evidence in the record. As her position is purely speculative, Snyder failed to prove a genuine issue of material fact existed in the record. As such, the circuit court correctly granted summary judgment in this case.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Jefferson Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

J. Tate Meagher
Christopher Bailey
Louisville, Kentucky

Zachary Taylor
Louisville, Kentucky

BRIEF FOR APPELLEES MATT
HAINES, BRIAN FUNK, JEFF
BROWN, AND TIM MAIER:

John F. Carroll
Kathryn Meador
Louisville, Kentucky